**Robert T. JOHNSTON, Appellant,**

**v.**

**Jesse BROWN, Secretary of Veterans Affairs, Appellee.**

No. 94–651.

United States Court of Veterans Appeals.

Jan. 29, 1997.

David L. Huffman, Chadds Ford, PA, was on the pleadings, for the appellant.

Mary Lou Keener, General Counsel; Ron Garvin, Assistant General Counsel; and David W. Engel, Deputy Assistant General Counsel, Washington, DC, were on the brief, for the appellee.

Before KRAMER, IVERS, and STEINBERG, Judges.

KRAMER, Judge, filed the opinion of the Court. STEINBERG, Judge, filed a concurring opinion.

KRAMER, Judge:

The appellant, Robert T. Johnston, appeals a May 18, 1994, decision of the Board of Veterans' Appeals (BVA or Board) denying increased ratings for shell fragment wound residuals of the left wrist, right thigh, and left anterior chest, each rated as 10% disabling. For the reasons that follow, the Court will affirm the BVA decision in part, vacate it in part, and remand two matters for adjudication.

## I. BACKGROUND

The appellant served on active duty in the U.S. Army from June 1967 to April 1969. Record (R.) at 63. Service medical records reflect that he sustained multiple shell fragment wounds of the left wrist, left chest, and right thigh in Vietnam. R. at 44–48. In July 1969, a Veterans' Administration (now Department of Veterans Affairs) (VA) regional office (RO) granted service connection for residuals of multiple shell fragment wounds to the left wrist and right thigh, each rated at 10% disabling, and granted a noncompensable rating for residuals of the left anterior chest wound. R. at 77. The appellant did not appeal this decision.

In March 1985, the appellant was involved in an automobile accident in which he sustained a fracture of the spine that left him paralyzed below the waist. R. at 87. In September 1985, he submitted a claim for non-service-connected pension. R. at 89–92. In November 1985, the RO issued an administrative decision that concluded that because the appellant's blood alcohol level on the night of the accident had been .258%, his injuries were the result of his own willful misconduct. R. at 128. In December 1985, the RO notified the appellant that his claim for non-service-connected pension benefits had been denied. R. at 130. Later that same month, the appellant filed a Notice of Disagreement (NOD). R. at 132. The RO issued its Statement of the Case in April 1985. R. at 141–45. The record reflects that the appellant did not perfect his appeal.

In February 1990, the appellant requested an increase in his disability compensation. R. at 164. In a March 1991 VA examination, the examiner stated the following:

Item # 1. On the lateral surface of the right thigh, the lower 1/3rd there is evidence of an entrance wound of a shell fragment. This is a circular with a circumference of a diameter of about 1 inch +. The skin itself is depressed, but not fixed to the underlying tissues. There is no edema. No foreign bodies able to be felt. There is no evidence of any herniation or infection.

Item # 2. On the dorsum of the left wrist, there is a scar from the entrance again of a shell fragment. The wrist itself is mobile without any crepitus or grating. The mobility is good. There is no evidence of infection. There is no pain on motion.

Item # 3. In the left anterior chest in the mid axillary line, there is a[n] oblique scar about 1½ inches long, which is just at the level of the 12th rib. This is well healed without any infection or herniation. There is no inflammation. X-rays available fail to show the evidence of any foreign body beneath this wound, which is the prime cause for consideration in this patient at this time.

R. at 194. In April 1991, the RO denied the appellant's claim for an increase in his disability ratings. R. at 202–03. He submitted an NOD in May 1991 (R. at 207) and a substantive appeal to the BVA in August 1991 (R. at 222–24). In his appeal to the Board the appellant stated, inter alia: "I also ask to have retroactive benefits to the date of the original claim as I have retained shrapnel in my chest since [the] date of [the] original claim. A clear and unmistakable error [CUE] has been made." R. at 222. In August 1991, the RO confirmed and continued the previously assigned disability ratings for the appellant's service-connected conditions. R. at 230.

An October 1991 VA chest x-ray report noted "a small metallic fragment beneath the diaphragmatic surface on the left that could be related to a shrapnel wound." R. at 237. The examiner's clinical impression was of a "normal chest, retained shrapnel fragment."

*Ibid.* The appellant submitted a substantive appeal to the BVA in October 1991. R. at 240. In January 1992, the RO issued another decision confirming and continuing its previously noncompensable rating for the residuals of a shell fragment wound of the left anterior chest. R. at 245. In February 1992, the appellant submitted another substantive appeal to the BVA. R. at 252–53. In December 1992, the BVA remanded the case to the RO for further development and review. R. at 265–69.

In July 1993, the appellant underwent a VA examination of the joints in which the examiner noted:

> [Right Thigh]; Sustained in Vietnam. He has a depressed, circular scar over the anterior/lateral distal right thigh about 3 inches above the knee. There is no significant tenderness or pain associated with this. He has a good range of motion in his knee and hip. No loss of muscle function in this area, particularly since this is mostly in the quadriceps which function normally. His hamstrings are quite weak on that side, as they are on the other side as well. LEFT WRIST; There is a scar about 1 to 1½ cm long over the dorsal aspect of the wrist opposite the radial border of the radius near the radial styloid. Range of motion of the wrist is generally within normal limits. He seems to have good strength in all muscle groups tested. There is some minimal tenderness of the wound itself [and] the scar around the wound. There was no evidence of infection.
>
> In the upper left ABDOMEN; He has a linear scar somewhat irregular in shape about 3 inches long, which is quite tender to pressure in the central portion. The degree of tenderness in this area suggest[s] he may have a neuroma in this region. The abdominal muscle function appear[s] to be normal. There is no impairment of function in his chest wall.
>
> X-rays taken of the chest, right thigh[,] and left wrist confirm the presence of small metallic fragments. . . .
>
> . . . .
>
> Conclusion; I do not feel that the wounds involving the wrist or thigh are giving him

major problems. He seems to have some minor discomfort in the wrist, with strenuous use. This maybe [sic] associated with some scar tissue in the area which maybe [sic] impinging on the extensor carpal radialis tendon to some extent, although the muscle seems to function normally. This seems to be a very minimal degree of impairment of function, however.

> I do not feel that the thigh wound is causing him any difficulty at all.
>
> As far as the upper abdomen wound, this is the area where he complains the most of having symptoms and other than for the possibility he may have a[ ] neuroma from scar tissue in this area[,] I cannot offer any explanation for this, besides the metallic fragment is miniscal [sic]. I do not think it is a factor in his complaints at all.

R. at 307–08. In August 1993, the RO denied increased disability ratings for the appellant's service-connected right wrist and thigh conditions; however, it granted an increase in his service-connected residuals of a shell fragment wound to the left anterior chest and assigned a 10% disability rating. R. at 325–27.

On May 18, 1994, the BVA, in its decision here on appeal, denied increased ratings for shell fragment wound residuals of the left wrist, right thigh, and left anterior chest, each rated as 10% disabling. The Board also concluded, as to each disability, that an extraschedular evaluation under 38 C.F.R. § 3.321(b)(1) (1996) was not warranted because "the [appellant]'s disorder is not so unusual and exceptional as to render impractical the application of the regular rating standards." R. at 14–15.

The appellant filed a timely appeal to the Court. In his brief, the appellant, through counsel, argues that his service-connected disabilities have aggravated his life in a wheelchair—specifically, that his chest wound causes him pain when getting in and out of the wheelchair and while using crutches, and his wrist wound hurts from pushing himself in the wheelchair. Brief (Br.) at 2. He also argues that an extraschedular evaluation was required. *Id.* at 5. The Secretary argues that there is a plausible basis in the

record for the denial of increased ratings for the right thigh and left anterior chest wounds. Br. at 17–18. He suggests remand of the wrist claim, citing *DeLuca v. Brown,* 8 Vet.App. 202 (1995) (Br. at 19–20), and argues that the CUE claim that had been raised below was abandoned on appeal because the appellant has not addressed the issue in his brief (*Id.* at 21–22). The Secretary contends, however, that if the Court finds that the appellant has not abandoned the issue, a remand is in order for the Board to address the issue of CUE in the July 1969 RO decision. *Id.* at 23–24. The Secretary also argues that because the appellant's automobile accident injuries were sustained as a result of his own willful misconduct, they may not be service connected either directly or as a consequence of aggravation by his service-connected disabilities. *Id.* at 24–26. Finally, the Secretary argues that an extraschedular evaluation is not warranted in this case because there is no evidence that the appellant's service-connected conditions have interfered with employment or that he has undergone frequent periods of hospitalization for his service-connected conditions that would render impractical the application of the regular rating standards. *Id.* at 26–27. In his reply brief, the appellant argues that, contrary to the Secretary's assertions, he has not abandoned the CUE issue. Reply Br. at 3.

## II. ANALYSIS

### A. Increased Ratings

■■■ A claim for an increased rating of a service-connected condition is a new claim, not subject to the provisions of 38 U.S.C. §§ 7104(b) and 7105(c) prohibiting reopening of previously disallowed claims except upon new and material evidence. *See Proscelle v. Derwinski,* 2 Vet.App. 629, 631–32 (1992). A claim for an increased rating is generally well grounded when an appellant indicates that he has suffered an increase in disability since the last rating. *Ibid.* The degree of disability under the rating code is a finding of fact subject to the "clearly erroneous" standard of review by this Court. *See Struck v. Brown,* 9 Vet.App. 145, 152 (1996); *Lovelace v. Derwinski,* 1 Vet.App. 73, 74

(1990); *Gilbert v. Derwinski,* 1 Vet.App. 49, 53 (1990). In determining whether a finding is clearly erroneous, "this Court is not permitted to substitute its judgment for that of the BVA on issues of material fact; if there is a 'plausible basis' in the record for the factual determinations of the BVA ... [the Court] cannot overturn them." *Ibid;* 38 U.S.C. § 7261(a)(4).

### 1. Left Wrist

■■■ The BVA evaluated the appellant's shell fragment wound of the left wrist as 10% disabling under 38 C.F.R. § 4.71a, Diagnostic Code (DC) 5214 (ankylosis of the wrist), and DC 5215 (limitation of motion of the wrist), § 4.73, DC 5308 (Muscle Group VIII, extension of wrist, fingers, and thumb), and § 4.118, DC 7803 (scars, superficial, poorly nourished, with repeated ulceration), DC 7804 (scars, superficial, tender and painful on objective demonstration), and DC 7805 (scars, other) (1996). Under DC 7803 and DC 7804, the maximum rating available is 10%; however, DC 7805 directs that the scars be evaluated on the basis of the "limitation of function of part affected."

Under DC 5214, in order to be eligible for a 30% rating for the major wrist extremity or 20% for the minor wrist extremity, the next higher ratings above the appellant's 10% rating, there must be ankylosis of the wrist "favorable in 20° to 30° dorsiflexion." In the March 1991 VA examination, the examiner found that "[t]he wrist itself is mobile without any crepitus or grating. The mobility is good. There is no evidence of infection. There is no pain on motion." R. at 194. In the July 1993 VA examination, the examiner noted that the "[r]ange of motion of the [left] wrist is generally within normal limits. He seems to have good strength in all muscle groups tested. There is some minimal tenderness of the wound itself [and] the scar around the wound." R. at 307. Since neither the 1991 nor 1993 VA examinations noted any ankylosis, the appellant does not satisfy the criteria for a rating under DC 5214.

■■■ Under DC 5215, the appellant's current 10% disability rating is the maximum rating available for limitation of motion of the

wrist. Nevertheless, the Secretary suggests that remand is appropriate because the BVA erred in its failure to consider functional loss due to pain. Functional loss due to pain can also limit range of motion. *See* 38 C.F.R. § 4.40 (1996); *DeLuca,* 8 Vet.App. at 205; *Schafrath v. Derwinski,* 1 Vet.App. 589, 592 (1991); *see also* 38 C.F.R. §§ 4.45, 4.59 (1996). A finding of such functional loss due to pain must be "supported by adequate pathology and evidenced by the visible behavior of the claimant." 38 C.F.R. § 4.40. Here, although the VA examiner in 1993 noted that the appellant "seems to have some minor discomfort in the wrist, with strenuous use" (R. at 308), the appellant is already receiving the maximum disability rating available under DC 5215 and, thus, remand is not appropriate.

DC 5308 provides a 20% rating for the major or minor wrist extremity where there is shown to be a "[m]oderately severe" injury to Muscle Group VIII affecting wrist extension. As noted above, the VA examiner in 1993 noted that the appellant "seems to have good strength in all muscle groups tested." R. at 307. Since neither the 1991 nor 1993 VA examination indicates that the appellant has a moderately severe injury to the muscles affecting wrist extension, he does not satisfy the criteria for a 20% rating under DC 5308. Based on the above, the Court concludes that the BVA's finding of entitlement to no more than a 10% disability rating, under all applicable DCs, for the appellant's left wrist disorder is plausible and, therefore, not clearly erroneous. *See Gilbert, supra.*

### 2. Right Thigh

■ The BVA evaluated the appellant's shell fragment wound of the right thigh as 10% disabling under 38 C.F.R. § 4.73, DC 5314 (Muscle Group XIV, anterior thigh group), and § 4.118, DCs 7803, 7804, 7805 (scars) (1996). As noted above, the maximum rating available under DCs 7803 and 7804 is 10%, and DC 7805 directs that the scars be evaluated on the basis of the "limitation of function of part affected."

Under DC 5314, in order to be eligible for a rating of 30%, the next rating above the appellant's 10% rating, there must be "[m]oderately severe" injury to the anterior thigh group. The VA examiner in 1993 noted with respect to the appellant's right thigh that the appellant "has a good range of motion in his knee and hip [and no] loss of muscle function in this area, particularly since this is mostly in the quadriceps which function normally." R. at 307. The examiner concluded by stating: "I do not feel that [t]he thigh wound is causing [the appellant] any difficulty at all." R. at 308. Thus, the BVA's finding of entitlement to no more than a 10% disability rating, under all applicable DCs, for the appellant's right thigh disorder is plausible and, therefore, not clearly erroneous. *See Gilbert, supra.*

### 3. Left Anterior Chest

■ The BVA evaluated the appellant's shell fragment wound of the left anterior chest as 10% disabling under 38 C.F.R. § 4.73, DC 5321 (Muscle Group XXI, muscles of respiration) and, § 4.118, DCs 7803, 7804, 7805 (scars) (1996). Once again, as noted above, the maximum rating available under DCs 7803 and 7804 is 10%, and DC 7805 directs that the scars be evaluated on the basis of the "limitation of function of part affected."

Under DC 5321, in order to be eligible for a 20% rating, there must be "moderately severe or severe" injury to the thoracic muscle group. The VA examiner in the 1991 examination reported that this wound was "well healed" without any infection, herniation, or inflammation. R. at 194. Likewise, the VA examiner in 1993 noted that the retained shell fragment was not a factor in the appellant's complaints of pain in the left anterior chest. R. at 308. Thus, the BVA's finding of entitlement to no more than a 10% disability rating, under all applicable DCs, for the appellant's left anterior chest disorder is plausible and, therefore, not clearly erroneous. *See Gilbert, supra.*

### B. *Allen v. Brown* Issue

■ The appellant also argues that he is entitled to increased disability compensation because his service-connected conditions have made his life more difficult in his wheelchair (the result of his non-service-connected back problem); i.e., he complains that his wrist hurts from pushing himself in his

wheelchair and that his chest wounds cause him pain when getting in and out of his wheelchair and while using crutches. Br. at 2, 4–5. In *Allen v. Brown*, 7 Vet.App. 439, 448 (1995) (en banc), the Court, in construing 38 C.F.R. § 3.310(a) (1996), held that "when aggravation of a veteran's non-service-connected condition is proximately due to or the result of a service-connected condition, such veteran shall be compensated for the degree of disability (but only that degree) over and above the degree of disability existing prior to aggravation." Here, the argument is the converse: that his non-service-connected injuries are aggravating his service-connected disabilities. Because section 3.310(a) and *Allen* require that the service-connected condition be the causative factor, not the acted-upon factor, they are not applicable.

### C. Extraschedular Evaluation

■ The Board is required to provide a written statement of the reasons or bases for its findings and conclusions on all material issues of fact and law presented on the record. *See* 38 U.S.C. § 7104(d)(1); *Allday v. Brown*, 7 Vet.App. 517, 527 (1995). The statement must be adequate to enable a claimant to understand the precise basis for the Board's decision, as well as to facilitate review by this Court. *See Allday, supra; Simon v. Derwinski*, 2 Vet.App. 621, 622 (1992); *Gilbert*, 1 Vet.App. at 57.

■ The appellant argues that an extraschedular evaluation was required. The BVA addressed this issue as follows: "[A]n extraschedular evaluation is not appropriate because the veteran's disorder is not so unusual and exceptional as to render impractical the application of the regular rating standards, pursuant to the provisions of 38 C.F.R. § 3.321(b)(1) (1993)." R. at 14–15. The Board has not offered anything in support of its statement that would identify those findings that it finds important to its decision, nor does it account for the evidence that it finds persuasive or unpersuasive. The Board has simply provided a "bare conclusory statement, without ... supporting analysis and explanation." *Watson v. Brown*, 4 Vet.App. 309, 315 (1993) (citing *Gilbert, supra)*. At a minimum, the reasons-or-bases

requirements mandate that the BVA address the effect of the appellant's wheelchair-based life on his service-connected conditions. Nor has the BVA addressed whether denial of an extraschedular evaluation by the BVA in the first instance was prejudicial, on the particular facts of this case, under *Bernard v. Brown*, 4 Vet.App. 384, 394 (1993). *Cf. Bagwell v. Brown*, 9 Vet.App. 337, 339 (1996) (Court found Board's consideration of extraschedular rating claim in first instance not prejudicial under *Bernard, supra*). Therefore, the Court finds the Board's statement of the reasons or bases for its May 18, 1994, BVA decision inadequate under 38 U.S.C. § 7104(d)(1). *See Fleshman v. Brown*, 9 Vet.App. 548, 552 (1996); *Bagwell, supra*.

### D. Earlier Effective Date Issue Based on CUE

■ The BVA did not address the issue of entitlement to an earlier effective date (i.e., increase in the July 1969 noncompensable rating) based on CUE. The Secretary argues that the CUE claim that had been raised below was abandoned on appeal because the appellant did not address the issue in his brief. The Secretary concedes, however, that if the Court finds that the appellant has not abandoned the issue, then a remand is in order for the Board to address the issue of CUE in the July 1969 RO decision. Although the appellant did not address the CUE issue in his initial brief, he did argue in his reply brief that he had not abandoned the CUE issue. Therefore, because the issue has not been abandoned, remand, as proposed by the Secretary, is appropriate. *See Archbold v. Brown*, 9 Vet.App. 124, 133 (1996).

### E. Earlier Effective Date Issue Based on Non–CUE issue

■ To the extent that the appellant may have raised an issue to the BVA with respect to entitlement to an earlier effective date (i.e., increase in the July 1969 noncompensable rating) on a basis other than CUE, such issue has been abandoned because the appellant has not raised it on appeal. *See Degmetich v. Brown*, 8 Vet.App. 208, 209 (1995);

*Bucklinger v. Brown,* 5 Vet.App. 435, 436 (1993).

## III.  CONCLUSION

Upon consideration of the record and the filings of the parties, the May 18, 1994, BVA decision is AFFIRMED in part and VACATED in part and two matters are REMANDED for further proceedings consistent with this opinion.  The appellant is free to submit additional evidence and argument on remand on the two remanded matters.  *See Quarles v. Derwinski,* 3 Vet.App. 129, 140–41 (1992).

STEINBERG, Judge, concurring:

I concur in the disposition of the case by the majority and in parts I., II.A., II.B., and III. of the Court's opinion.  I write separately to explain the means by which I would reach the conclusions that the majority does in parts II.C. and II.D.

### I.  Extraschedular Rating

In its discussion of the extraschedular-rating claim in part II.C., the majority concludes that remand is in order because the Board of Veterans' Appeals' (BVA or Board) statement of reasons or bases was inadequate under 38 U.S.C. § 7104(d)(1) as to its denial of that claim.  *Ante* at 86.  In so concluding, the majority ignores two logical steps necessary to the result it reaches:  (1) that 38 C.F.R. § 3.321(b) (1996) applies to the circumstances described and (2) that the veteran has presented evidence sufficient to well ground such an extraschedular-rating claim and thereby invoke the reasons-or-bases requirement.  I agree that the majority's disposition in this part of the opinion is correct, but I believe the process required to reach that disposition merits elaboration.

### A.  38 C.F.R. § 3.321(b)

Department of Veterans Affairs (VA) regulations in 38 C.F.R. § 3.321(b) explain the standard for assigning an extraschedular rating:

> The governing norm in these exceptional cases is:  A finding that the case presents such an exceptional or unusual disability picture with such related factors as marked interference with employment or frequent periods of hospitalization as to render impractical the application of the regular schedular standards.

38 C.F.R. § 3.321(b).  Our caselaw has not clearly held whether § 3.321(b)'s identification of "frequent periods of hospitalization" or "marked interference with employment" makes them the *sole* criteria for extraschedular evaluation.  Some of this Court's cases might be read as suggesting tacit approval of BVA treatment of these criteria as exclusive because they remand, for inadequate statements of reasons or bases under § 3.321(b), cases in which the BVA appeared to treat those criteria as exclusive but failed to address evidence relating to those criteria.[1]  Other cases in our Court seem to treat § 3.321(b) broadly, such that any "exceptional or unusual factors" could necessitate consideration of an extraschedular rating.[2]  Moreover, the language of the regulation, listing interference with employment or frequent hospitalization as *"such* related factors "* (emphasis added), seems to contemplate more than merely those two examples.[3]

---

1.  *See Fleshman v. Brown,* 9 Vet.App. 548, 552 (1996); *Bagwell v. Brown,* 9 Vet.App. 337, 339 (1996).  However, these cases presented no occasion for considering whether criteria other than frequent hospitalization or interference with employment could apply under 38 C.F.R. § 3.321(b), and their mere mention of the listed criteria under the regulation cannot function to narrow the regulation.

2.  *See Shipwash v. Brown,* 8 Vet.App. 218, 227 (1995) ("[a]ccording to *Fisher* [*v. Principi,* 4 Vet. App. 57, 60 (1993) ], the BVA must address referral under § 3.321(b)(1) only where circumstances are presented which the Director of VA's Compensation and Pension Service might consider exceptional or unusual"); *Fisher, supra* ("the rating schedule will apply unless there are 'exceptional or unusual' factors which render application of the schedule impractical").

3.  *Cf. Brown (Kevin) v. Brown,* 5 Vet.App. 413, 419 (1993) ("[b]ecause this regulatory language is neither ambiguous nor inconsistent with law, it must be applied in accordance with its plain meaning"); *cf. also Smith (William A.) v. Brown,* 35 F.3d 1516, 1523 (Fed.Cir.1994) (canons of statutory interpretation apply also to interpreting regulations); *Gardner v. Brown,* 5 F.3d 1456, 1458 (Fed.Cir.1993), *aff'd,* 513 U.S. 115, 115 S.Ct. 552, 130 L.Ed.2d 462 (1994) ("starting point in interpreting a statute is its language, for 'if the intent of Congress is clear, that is the end

Although the wording of § 3.321(b) is not entirely free from ambiguity,[4] I agree with the majority that the "effect of the appellant's wheelchair-based life on his service-connected conditions", *ante* at 86, even if that effect has not been articulated in terms of effect on employment or frequent hospitalization, does raise the possibility of an "exceptional or unusual disability picture" as a result of service-connected disability that should be considered by the Board under 38 C.F.R. § 3.321(b).

## B. Well-Grounded Claim

In order to invoke the statement-of-reasons-or-bases requirement of 38 U.S.C. § 7104(d)(1) in this case, the violation of which the majority cites as grounds for remand as to § 3.321(b), the claimant must make out a well-grounded claim for an increased rating. *See Tirpak v. Derwinski,* 2 Vet.App. 609, 610–11 (1992); *Grivois v. Brown,* 6 Vet.App. 136, 140 (1994); *Kelly (Gene) v. Brown,* 7 Vet.App. 471, 474–75 (1995) (Steinberg, J., dissenting). *But cf. Murphy v. Derwinski,* 1 Vet.App. 78, 82 (1990) (Court remanded claim because to extent BVA had found claim not well grounded BVA failed to provide "requisite statement of 'reasons or bases' for such a conclusion"). A rating-increase claim is generally well

grounded when a claimant indicates that he or she has suffered an increase in disability. *See Proscelle v. Derwinski,* 2 Vet.App. 629, 631–32 (1992). The veteran here submitted a well-grounded claim for a rating increase by virtue of his February 1990 application for an increase in his disability compensation (R. at 164) and of the March 1991 and July 1993 VA examinations (R. at 194, 307–08). Such a well-grounded rating-increase claim subsumes the issue of entitlement to an extraschedular rating under § 3.321(b), because the Court has held that the extraschedular-rating issue is necessarily intertwined with a claim for an increased rating. *Floyd v. Brown,* 9 Vet.App. 88, 96 (1996) (noting that issue of extraschedular rating is not a "matter" separate from an increased-rating claim but is "always part of the same claim" under *Bernard v. Brown,* 4 Vet.App. 384, 391–92 (1993), and 38 U.S.C. § 7104(a) and that Board was thus obligated to consider applicability of extraschedular-rating regulation), *recons. and en banc rev. denied,* 9 Vet.App. 253 (1996) (en banc); *see also id.* at 102–03 (Steinberg, J., concurring in part and dissenting in part).[5]

When a claimant submits evidence, including by alleging facts as to which he or she is competent to testify,[6] such as—but not limit-

4. The use of "such" creates some ambiguity when it is followed by two uses of "as". Although it seems fairly clear that the first "as" more logically goes with "such" (so as to make the two criteria merely examples), it is possible that the drafters also meant the "such" to go with the second "as" ("such related factors ... as to render") and that the reference to the two criteria was intended, however poorly expressed, to be exclusive. Any ambiguity could be readily solved by adding "so" before the second "as".

5. What is subsumed in a rating-increase claim is a matter quite different from whether a claim for one mental disorder includes a claim for another mental disorder when the latter disorder was not diagnosed at the time that the first claim was brought and the latter disorder was never consid-

of the matter' " (internal punctuation omitted) (affirming *Gardner v. Derwinski,* 1 Vet.App. 584 (1991), and quoting *Good Samaritan Hosp. v. Shalala,* 508 U.S. 402, 409, 113 S.Ct. 2151, 2156–57, 124 L.Ed.2d 368 (1993) (itself quoting *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 842, 104 S.Ct. 2778, 2781, 81 L.Ed.2d 694 (1984))).

ered by the VA regional office (RO). *See Ephraim v. Brown,* 82 F.3d 399, 402 (Fed.Cir.1996) (vacating *Ephraim v. Brown,* 5 Vet.App. 549 (1993), and concluding that, for purposes of whether there was jurisdiction-conferring Notice of Disagreement (NOD) under section 402 of Veterans' Judicial Review Act, Pub.L. No. 100–687, § 402, 102 Stat. 4105, 4122 (1988) (found at 38 U.S.C. § 7251 note), as to service-connection claim, "a claim based on the diagnosis of a new mental disorder, taken alone or in combination with a prior diagnosis of a related mental disorder, states a new claim, for the purpose of the jurisdictional requirement, when the new disorder had not been diagnosed and considered at the time of the prior [NOD]", and hence separate NOD is required to put into appellate status a claim as to that newly-diagnosed disorder); *Ephraim,* 5 Vet.App. at 551–54 (Steinberg, J., dissenting).

6. See *Espiritu v. Derwinski,* 2 Vet.App. 492, 494 (1992). Facts so alleged are presumed credible for the purpose of determining whether a claim is well grounded. *See Robinette v. Brown,* 8 Vet.App. 69, 75–76 (1995); *King v. Brown,* 5 Vet.App. 19, 21 (1993).

ed to—frequent hospitalizations or marked interference with employment, consistent with § 3.321(b), or expressly requests an extraschedular rating prior to the BVA decision, the Board is required to address the need for an extraschedular rating as a route to the increased rating for which the claimant has applied.[7] In this respect, I agree with the August 16, 1996, opinion of the VA General Counsel, that "where the claimant has not expressly raised the issue of entitlement to a rating under section 3.321(b)(1) . . . , the Board will be required to address the issue only if the evidence and argument before the Board reasonably indicated that [that] regulation[ ][is] potentially applicable". VA Gen. Coun. Prec. 6–96 ¶ 6 [hereinafter G.C. Prec. 6–96].

In the present case, the appellant made allegations in his brief that his wheelchair-bound condition has aggravated his service-connected disabilities (Br. at 2, 4–5) (an issue that the majority correctly disposes of under *Allen v. Brown,* 7 Vet.App. 439, 448 (1995) (en banc), *ante* at 85–86). Nevertheless, it is plain from the BVA decision that both the fact of his wheelchair-bound status and the possible special difficulty for that status resulting from his service-connected conditions was before the Board. *See* R. at 11 ("[h]e had some symptoms from the left wrist wound when pushing his wheelchair"); R. at 223 (Form 1–9 (Substantive Appeal to the BVA) stating, inter alia: "when the veteran bends or moves the wrong way the vet *will have* sharp pains in his chest and side") (underlining in original). Moreover, the July 1993 VA examination specifically noted that the veteran "seems to have some minor discomfort in the wrist, with strenuous use." R. at 308. Because the veteran's claim for an increased rating for his service-connected disability was well grounded (*see Proscelle, supra* ), the Board was required to construe his claim liberally; as this Court held in *Floyd v. Brown:* "The procedural requirements of 38 C.F.R. § 3.321(b)(1) do not dero-

gate from the ability or obligation of the Board to seek out all issues which are reasonably raised [as to the claim for an increased rating] from a liberal reading of the documents or oral testimony submitted prior to the BVA decision." *Floyd,* 9 Vet.App. at 95–96 (citing *EF v. Derwinski,* 1 Vet.App. 324, 326 (1991)).

Thus, I believe that the increased-rating claim was well grounded on the record in this case and that the Court is correct in remanding the extraschedular-rating issue for an adequate statement of reasons or bases by the Board. Such an issue is subsumed in the increased-rating claim here because the evidence of record reasonably raised an "exceptional or unusual disability picture" that could "render impractical the application of the regular schedular standards" to the claim for an increased rating. 38 C.F.R. § 3.321(b); *see* G.C. Prec. 6–96, *supra.* Otherwise, in view of the fact that the veteran did not expressly raise such an issue prior to the BVA decision on appeal, the Board's inadequate statement of reasons or bases would be a nonprejudicial error because the claimant would not have been entitled to an adjudication as to an extraschedular rating. *See* 38 U.S.C. § 7261(b); *cf. Edenfield v. Brown,* 8 Vet.App. 384, 390 (1995) (en banc) (holding that when Board incorrectly finds claim to be well grounded and then denies it on merits, Board's error is not prejudicial to appellant and BVA decision will be affirmed as to disallowance of claim).

## II. CUE Claim

The majority also concludes that because the appellant addressed his CUE claim in his reply brief, the claim was not abandoned and that remand is therefore appropriate. *Ante* at 86. However, in my view, the Court has jurisdiction to deal with the BVA's failure in its May 1994 decision to adjudicate the CUE claim, raised in the veteran's August 13, 1991, Form 1–9, *only* if that claim was raised

7. *See Shipwash, supra* (where no evidence of "an exceptional disability picture [including the itemized criteria]", Board need not evaluate for extraschedular rating); *Fleshman, supra* (remanding, with regard to § 3.321(b), where Board failed to satisfy reasons-or-bases requirement to discuss, inter alia, reason veteran found unaccep-

table for employment); *Bagwell, supra* (remanding, with regard to § 3.321(b), because Board failed to provide full reasons-or-bases analysis with regard to a letter from an employer who denied employment on basis of veteran's disabilities).

before a regional office (RO) decision preceding the BVA decision on appeal and the veteran had filed an NOD as to that VARO's failure to adjudicate that CUE claim. *See Phillips v. Brown,* 10 Vet.App. 25, 30 (1997) (claim of CUE is a separate claim for NOD purposes); *see also id.* at 32, 34–35 (Steinberg, J., concurring in part and dissenting in part). In *Slater v. Brown,* 9 Vet.App. 240, 244–45 (1996), the Court (quoting *Isenbart v. Brown,* 7 Vet.App. 537, 541 (1995)) held that it had no jurisdiction over a claim for a total disability rating based on individual unemployability (TDIU) in the absence of a filing that could properly be construed as an NOD "expressing disagreement with the failure of the RO to address a TDIU claim." Although in earlier cases the Court had found jurisdiction over inferred claims *without looking* at the NOD question,[8] I believe that *Isenbart* and *Slater* represent an evolution of the law since then and that an NOD is now required in order for the Court to have jurisdiction to remand for the BVA's failure to adjudicate a claim whether inferred or, as here, made directly. The majority opinion ignores this issue.

**8.** *See Douglas v. Derwinski,* 2 Vet.App. 435, 439–40 (1992) (en banc); *EF v. Derwinski,* 1 Vet.App. 324, 326 (1991); *Payne v. Derwinski,* 1 Vet.App. 85, 87 (1990).

**9.** This Court's appellate jurisdiction derives exclusively from statutory grants of authority provided by Congress and may not be extended beyond that permitted by law. *See Christianson v. Colt Industries Operating Corp.,* 486 U.S. 800, 818, 108 S.Ct. 2166, 2178–79, 100 L.Ed.2d 811 (1988); *see also Prenzler v. Derwinski,* 928 F.2d 392, 393–94 (Fed.Cir.1991); *Skinner v. Derwinski,* 1 Vet.App. 2 (1990). The Court has jurisdiction to review only those final BVA benefits decisions prior to which an NOD was filed on or after November 18, 1988, as to an underlying decision of an RO or other VA agency of original jurisdiction. *See* Veterans' Judicial Review Act, Pub.L. No. 100–687 § 402, 102 Stat. 4105, 4122 (1988) (found at 38 U.S.C. § 7251 note). *See generally Hamilton v. Brown,* 4 Vet.App. 528 (1993) (en banc), *aff'd,* 39 F.3d 1574 (Fed.Cir. 1994).

**10.** In *Russell v. Principi,* the Court defined CUE as follows:

Either the correct facts, as they were known at the time, were not before the adjudicator or

In other words, absent a valid NOD as to the CUE claim in this case, this Court lacks jurisdiction to remand that claim to the BVA.[9] However, I believe that there is a valid NOD as to this claim. After the CUE claim was raised to the Board by the veteran in his August 1991 Form 1–9 (R. at 222–24),[10] there was an RO decision on August 29, 1991 (R. at 224), and another on January 2, 1992 (R. at 239), that did not address that CUE claim. Thereafter, in a February 18, 1992, Form 1–9, the veteran stated: "The veteran also asks that V.A. look at his 1–9 dated 8–5–91." (R. at 247). I believe that this reference back to the Form 1–9 that had raised the CUE claim is sufficient to satisfy what *Slater* characterized as *Isenbart*'s holding that "in order for 'appellate review [to be] initiated,' the 'language contained in the NOD [must] sufficiently encompass[ ] the RO's failure to adjudicate the TDIU claim.' " *Slater,* 9 Vet.App. at 244. The Court has held that a Form 1–9 can be an NOD as to a claim if there is not another NOD as to that claim. *Malgapo v. Derwinski,* 1 Vet.App. 397, 398–99 (1991) (in a portion not overruled by *Hamilton v. Brown,* 4 Vet.App. 528, 538 (1993) (en banc), *aff'd,* 39 F.3d 1574 (Fed.Cir. 1994)). Thus, in my view, under applicable

the statutory or regulatory provisions extant at the time were incorrectly applied.... [CUE] is the sort of error which, had it not been made, would have manifestly changed the outcome ... [, an error that is] undebatable, so that it can be said that reasonable minds could only conclude that the original decision was fatally flawed.

*Russell v. Principi,* 3 Vet.App. 310, 313 (1992) (en banc). "In order for there to be a valid claim of [CUE], ... [t]he claimant, in short, must assert more than a disagreement as to how the facts were weighed or evaluated." *Ibid.* "If a claimant-appellant wishes to reasonably raise CUE there must be some degree of specificity as to what the alleged error is and, unless it is the kind of error, as in *Mata [v. Principi,* 3 Vet.App. 558 (1992) ], that, if true, would be CUE on its face, persuasive reasons must be given as to why the result would have been *manifestly* different but for the alleged error." *Fugo v. Brown,* 6 Vet.App. 40, 44 (1993). In the present case, the veteran's Form 1–9 (R. at 222–24) appears to satisfy the *Russell* and *Fugo* requirements: the veteran both states that "a clear and unmistakable error has been made" and argues that the medical examinations performed by VA were not in keeping with the requirements of 38 C.F.R. §§ 4.2, 4.42, 4.49, 4.50, and 4.56 (1990).

precedent, the Court has jurisdiction to remand the CUE claim because—and only because—there was a jurisdiction-conferring NOD as to the RO's failure to adjudicate that claim after it had been raised to the RO.