Citation Nr: 1214073 
Decision Date: 04/17/12 Archive Date: 04/27/12

DOCKET NO. 08-27 292 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Atlanta, Georgia


THE ISSUES

1. Entitlement to an initial compensable rating for bilateral hearing loss. 

2. Entitlement to an initial compensable rating for a sleep apnea. 

3. Entitlement to an initial compensable rating for a calcaneal spur of the right heel. 


REPRESENTATION

Appellant represented by: Georgia Department of Veterans Services


ATTORNEY FOR THE BOARD

Emily L. Tamlyn, Associate Counsel



INTRODUCTION

The Veteran had over 22 years of active service prior to his retirement in July 2006. 

These matters come before the Board of Veterans' Appeals (Board) on appeal from a November 2006 rating action of the Department of Veterans Affairs Regional Office (RO) in Jackson, Mississippi. In that decision, the RO granted claims for service connection for bilateral hearing loss, a sleep apnea, and a calcaneal spur of the right heel. All of these claims were assigned a noncompensable rating, effective from August 1, 2006, the date of separation from service. 

This claim was remanded in March 2010 so the Veteran could be scheduled for a Board hearing. The Veteran requested the hearing be rescheduled in March and July 2010 and then withdrew his request for a hearing in November 2010. 

The issue of entitlement to an initial compensable rating for bilateral hearing loss is addressed in the REMAND portion of the decision below and is REMANDED to the RO via the Appeals Management Center (AMC), in Washington, DC. 


FINDINGS OF FACT

1. The sleep apnea is not manifested by persistent daytime hypersonmolence, use of a continuous airway pressure (CPAP) machine, chronic respiratory failure, cor pulmonale or tracheostomy. 

2. The calcaneal spur of the right heel is manifested by intermittent pain. 


CONCLUSIONS OF LAW

1. The criteria for a compensable rating for a sleep apnea have not been met. 38 U.S.C.A. §§ 1155, 5107 (West 2002 & Supp. 2011); 38 C.F.R. §§ 3.321, 4.3, 4.7, 4.10, 4.100, Diagnostic Code (DC) 6847 (2011). 

2. The criteria for a compensable rating for a calcaneal spur of the right heel have not been met. 38 U.S.C.A. §§ 1155, 5107 (West 2002 & Supp. 2011); 38 C.F.R. §§ 3.321, 4.3, 4.7, 4.10, 4.71a, DC 5015, 5276-5284 (2011). 


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

Duties to Notify and to Assist 

The Veteran's initial increased rating claims arise from his disagreement with the initial evaluation following the grants of service connection. Courts have held that once service connection is granted the claim is substantiated, additional notice is not required and any defect in the notice is not prejudicial. Hartman v. Nicholson, 483 F.3d 1311 (Fed. Cir. 2007); Dunlap v. Nicholson, 21 Vet. App. 112 (2007). The Board finds the Veteran was given proper notice regarding his service connection claims in an August 2006 letter. 

The "duty to assist" contemplates that VA will help a claimant obtain records relevant to the claim, whether or not the records are in Federal custody, and that VA will provide a medical examination when necessary to make a decision on the claim. 38 C.F.R. § 3.159 (2011). VA has done everything reasonably possible to assist the Veteran with respect to his claim for benefits in accordance with 38 U.S.C.A. § 5103A (West 2002) and 38 C.F.R. § 3.159(c) (2011). The Board finds that all service treatment records have been associated with the file. The Veteran contacted VA using a military email address in July 2010 that indicates the Veteran is now a civilian working with the military. He called from Iraq in March 2010 and he did not state he was on active duty. The Veteran received a VA examination addressing his sleep apnea and calcaneal spur in September 2006. The Board finds this examination report is fully adequate for rating purposes. 

Also, while a September 2010 memorandum indicates that new service treatment records were received (and states that this evidence does not pertain to the issues on appeal) the Board finds that these records were copies and already of record at the time the August 2008 statement of the case was issued. No re-adjudication of the claims on appeal is necessary. The Board finds the duties to notify and assist have been met. 

Legal Criteria and Analysis

In evaluating the severity of a particular disability, it is essential to consider its history. 38 C.F.R. §§ 4.1 and 4.2 (2011). The entire period is considered for the possibility of staged ratings. Consideration will be given to the possibility of separate ratings for separate periods of time based on the facts found. Hart v. Mansfield, 21 Vet. App. 505, 509-510 (2007). 

Disability evaluations are determined by the application of a schedule of ratings which is based, as far as can practicably be determined, on the average impairment of earning capacity. 38 U.S.C.A. § 1155 (West 2002); 38 C.F.R. § 4.1 (2011). Each service-connected disability is rated on the basis of specific criteria identified by diagnostic codes (DCs). 38 C.F.R. § 4.27 (2011). 

In Thun v. Peake, 22 Vet. App. 111 (2008), the United States Court of Appeals for Veterans Claims (Court) clarified the analytical steps necessary to determine whether referral for extraschedular consideration is warranted. Either the RO or the Board must first determine whether the schedular rating criteria reasonably describe a veteran's disability level and symptomatology. Id. at 115. If the schedular rating criteria do reasonably describe a veteran's disability level and symptomatology, the assigned schedular evaluation is adequate, referral for extraschedular consideration is not required, and the analysis stops. If the evaluation is not adequate, further determinations must be made in consideration with factors such as marked interference with employment and frequent periods of hospitalization. Id. at 116. The matter may need a referral to the Under Secretary for Benefits or the Director of the Compensation and Pension Service. Id. 

In adjudicating these claims, the Board must assess the competence and credibility of the Veteran. Washington v. Nicholson, 19 Vet. App. 362 (2005). Lay testimony is competent if it is limited to matters that the witness has actually observed and is within the realm of the witnesses' personal knowledge. Barr v. Nicholson, 21 Vet. App. 303 (2007), Layno v. Brown, 6 Vet. App. 465 (1994). For example, in Barr, the Court held that varicose veins were a disability that was capable of lay observation for the purpose of establishing service connection. Under 38 C.F.R. § 3.159(a)(2) (2011), competent lay evidence means any evidence not requiring that the proponent have specialized education, training or experience. Lay evidence is competent if it is provided by a person who has knowledge of the facts or circumstances and conveys matters that can be observed and described by a lay person. Id. 

The Board must also assess the credibility, and therefore the probative value of the evidence of record in its whole. Owens v. Brown, 7 Vet. App. 429 (1995); Madden v. Gober, 125 F. 3d 1477 (Fed. Cir. 1997). In determining whether documents submitted by a veteran are credible, the Board may consider internal consistency, facial plausibility, and consistency with other evidence submitted on behalf of the claimant. Caluza v. Brown, 7 Vet. App. 498 (1995). 

At the September 2006 VA examination, the Veteran stated that he was currently employed full-time. The Board does not find that a claim of a total disability rating for individual unemployability (TDIU) has been raised in this case in relation to either initial increased rating on appeal. See Rice v. Shinseki, 22 Vet. App. 447, 453-54 (2009); Jackson v. Shinseki, 587 F.3d 1106 (Fed. Cir. 2009). 

Initial Increased Rating for Sleep Apnea

The Veteran is currently assigned a noncompensable rating for sleep apnea; a 0 percent rating is assigned when sleep apnea is asymptomatic but with documented sleep disorder breathing. 38 C.F.R. § 4.97, DC 6847. Sleep apnea warrants a 30 percent rating where there is evidence of persistent day-time hypersomnolence. Id. A 50 percent rating will be assigned for sleep apnea with evidence of required use of a breathing assistance device such as a continuous airway pressure (CPAP) machine. Id. A 100 percent evaluation requires evidence of chronic respiratory failure with carbon dioxide retention or cor pulmonale, or the need for a tracheostomy. Id. 

The Board has considered the history of the Veteran's disability. 38 C.F.R. §§ 4.1 and 4.2. A private 2004 polysomnography report shows a conclusion of mild obstructive sleep apnea syndrome with mild impairment in patient's sleep quality. This record was taken into account in an October 2004 service treatment record where the Veteran complained of loud snoring; the assessment was mild obstructive sleep apnea. An April 2005 service treatment record shows the Veteran underwent septoplasty and uvulopalatal flap in March 2005. He was doing well and the assessment was that Veteran was significantly better after surgery. 

The Veteran separated from service in July 2006 and his VA examination was in September. The examiner reviewed the claims file and summarized the service treatment records regarding sleep apnea. The Veteran stated that since his surgery his wife told him his snoring had decreased along with the tossing and turning. He could stay up longer at night and denied daytime hypersomnolence. He denied fever, night sweats, weight loss, weight gain or hemotysis. He had never tried CPAP or any other treatment for sleep apnea. The examiner concluded that the Veteran's surgery improved his symptoms and did not have any functional limitations from his sleep apnea. 

The Board must address competence and credibility. The Board finds the Veteran competent to state what he has personally experienced regarding his sleep apnea under Barr and 38 C.F.R. § 3.159(a)(2). The Veteran has not submitted any statements to VA regarding his symptoms except for what he reported what his wife observed and what he experienced at the VA examination. As for credibility, the Board finds the Veteran was extraordinarily candid regarding his lack of symptoms. Caluza v. Brown, 7 Vet. App. 498. 

The Board finds that compensable rating is not warranted for the Veteran's service-connected sleep apnea. The Board relies on the Veteran's competent statements and the September 2006 VA examination in coming to this conclusion. There is no evidence of persistent daytime hypersomnolence; use of CPAP or breathing assistance device; chronic respiratory failure with carbon dioxide retention; cor pulmonale; or the need for a tracheostomy. 38 C.F.R. § 4.97, DC 6847. 

The Board finds the severity of the Veteran's service-connected sleep apnea is fully contemplated by the rating criteria. There is nothing exceptional about this service-connected disability. The degree of disability exhibited is contemplated by the rating schedule. The Board finds that the threshold test is not met for referral for extraschedular consideration. 38 C.F.R. § 4.16(b); Thun, 22 Vet. App. 111. 

Based upon the guidance of the Court in Hart v. Mansfield, 21 Vet. App. at 509-510, the Board has considered whether any staged ratings are appropriate. In the present case, the Board finds that no staged ratings are warranted. The Board does find that the schedular rating criteria reasonably describe the Veteran's disability level and symptomatology. The reasonable doubt rule is not for application and the appeal is denied. See 38 U.S.C.A. § 5107(b) (West 2002); 38 C.F.R. § 3.102 (2011). 

Initial Increased Rating for a Calcaneal Spur of the Right Heel

The service-connected calcaneal spur of the right heel has been rated under DC 5015 (benign new growths of the bones). Benign new growths of the bones are to be rated as degenerative arthritis based on limitation of motion. 38 C.F.R. § 4.71a, DC 5015 (2011). The Board finds that since this disability involves the plantar surface of the right heel (see September 2006 VA examination report), it is not appropriate to rate based on limitation of motion. 

Instead, the Board has considered alternative DCs for the foot under 38 C.F.R. § 4.71a, DCs 5276-5284. The Veteran has not been diagnosed with and is not symptomatic for bilateral weak foot (DC 5277), acquired claw foot or pes cavus (DC 5278); unilateral metatarsalgia or Morton's disease (DC 5279). He does not have unilateral hallux valgus (DC 5280); unilateral severe hallux rigidus (DC 5281); hammer toe (DC 5282) or malunion/nonunion of tarsal or metatarsal bones (DC 5283). 

For acquired flatfoot, a noncompensable rating is assigned when symptoms are mild and relieved by a built-up shoe or arch support. 38 C.F.R. § 4.71a, DC 5276 (2011). A 10 percent rating contemplates moderate flatfoot with weight-bearing over or medial to the great toe, inward bowing of the tendo achillis, and pain on manipulation and use of the feet. Id. Significantly, the 10 percent rating is assigned whether the disability was bilateral or unilateral. Id. 

A higher evaluation of 20 percent, under DC 5276, is assigned for severe unilateral acquired flatfoot, with objective evidence of marked deformity, pain on manipulation and use accentuated an indication of swelling on use, and characteristic callosities. A 30 percent evaluation is assigned for pronounced bilateral acquired flatfoot, with marked pronation, extreme tenderness of plantar surfaces of the feet, marked inward displacement and severe spasm of the tendo achilles on manipulation, not improved by orthopedic shoes or appliances. Id. 

Other foot injuries are addressed under DC 5284. A moderate injury warrants a 10 percent rating. 38 C.F.R. § 4.71a, DC 5284 (2011). A 20 percent rating is assigned for a moderately severe injury and a severe injury is assigned a 30 percent rating. A note states that 40 percent is assigned when there is actual loss of use of the foot. 

Words such as "moderate," "moderately severe" and "severe" are not defined in the Rating Schedule. Rather than applying a mechanical formula, the Board must evaluate all of the evidence to the end that its decisions are "equitable and just." 38 C.F.R. § 4.6 (2011). Use of terminology such as "severe" by VA examiners and others, although evidence to be considered by the Board, is not dispositive of an issue. All evidence must be evaluated in arriving at a decision regarding an increased rating. 38 C.F.R. §§ 4.2, 4.6 (2011). 

Disability of the musculoskeletal system is primarily the inability, due to damage or infection in parts of the system, to perform the normal working movements of the body with normal excursion, strength, speed, coordination and endurance. It is essential that the examination upon which ratings are based adequately portray the anatomical damage, and the functional loss, with respect to all these elements. The functional loss may be due to absence of part, or all, of the necessary bones, joints and muscles, or associated structures, or to deformity, adhesions, defective innervation, or other pathology, or it may be due to pain, supported by adequate pathology and evidenced by the visible behavior of the claimant undertaking the motion. Weakness is as important as limitation of motion, and a part that becomes painful on use must be regarded as seriously disabled. A little used part of the musculoskeletal system may be expected to show evidence of disuse, either through atrophy, the condition of the skin, absence of normal callosity or the like. 38 C.F.R. § 4.40 (2011). 

Evidence of pain, weakened movement, excess fatigability, or incoordination must be considered in determining the level of associated functional loss in light of 38 C.F.R. § 4.40, taking into account any part of the musculoskeletal system that becomes painful on use. DeLuca v. Brown, 8 Vet. App. 202 (1995). The provisions of 38 C.F.R. § 4.14 (avoidance of pyramiding) do not forbid consideration of a higher rating based on greater limitation of motion due to pain on use, including flare ups. 38 C.F.R. § 4.14 (2011). The provisions of 38 C.F.R. § 4.40 and 38 C.F.R. § 4.45, however, should only be considered in conjunction with the diagnostic codes predicated on limitation of motion. Johnson v. Brown, 9 Vet. App. 7, 11 (1996). Also, functional loss due to pain must be supported by pathology and shown through objective observation. Johnston v. Brown, 10 Vet. App. 80, 84-85 (1997) (citing 38 C.F.R. § 4.40). 

Here, the Board finds that a compensable rating for a calcaneal spur of the right heel is not warranted. At the September 2006 VA examination, the Veteran stated he developed pain in the plantar surface of his right heel. He said it was intermittent and occurred four to five times per month and lasted six to seven hours. He took Motrin and this relieved the pain. He used heel pads, stretched his foot, buys shoes with thick soles, and is careful about the types of shoes he wears. 

He did not have pain in the heel at the examination. He denied weakness, swelling, heat and redness. He had no flare ups, no orthotic, and no surgery on his foot. He had no symptoms at rest. He denied that the right heel interfered with activities of daily living, driving, yard work, home maintenance, recreational pursuits, or job duties. He did have some stiffness, fatiguability and lack of endurance when there is pain; it would slow his activities down. He said the heel was symptomatic with standing and walking. 

Physical examination revealed normal gait and was normal. There was no tenderness to palpation of the right heel. Range of motion and repetitive motion testing did not reveal abnormalities related to the heel. There was no instability, incoordination or weakness. There was no abnormal shoe wear. An X-ray of the right foot and calcaneus revealed a large calcaneal spur. The impression was the same. 

Again, the Board must address competence and credibility. The Board finds the Veteran competent to state what he has personally experienced regarding his right heel under Barr and 38 C.F.R. § 3.159(a)(2). The Veteran has not submitted any statements to VA regarding his symptoms except for what he reported at the September 2006 VA examination. To this extent, the Board finds those statements credible. Caluza, 7 Vet. App. 498. 

The evidence shows a compensable rating for a calcaneal spur of the right heel is not warranted. At the September 2006 VA examination, no acquired flatfoot was found, but the Veteran did tell the examiner his pain was relieved by shoe supports. The noncompensable rating for acquired flatfoot is assigned when symptoms are mild and relieved by a built-up shoe or arch support. 38 C.F.R. § 4.71a, DC 5276. Using this code by analogy, the symptoms for a 10 percent rating (moderate flatfoot with weight-bearing over or medial to the great toe, inward bowing of the tendo achillis, and pain on manipulation and use of the feet) were not found. Id. 

For the other foot injury rating under DC 5284, moderate injury warrants a 10 percent rating. 38 C.F.R. § 4.71a, DC 5284. The Board does not find that calcaneal spur of the right heel is properly characterized as moderate because the Veteran's right heel pain was intermittent and it was relieved by medication and proper footwear. While the Veteran had some symptoms, he did not have tenderness to palpation, instability, incoordination or weakness. There was a lack of objective findings at the examination. See, Johnston, 10 Vet. App. at 84-85. As a result, the Board finds a compensable rating is not warranted. 

The Board has also considered 38 C.F.R. §§ 4.40, 4.45, and 4.59, addressing the impact of functional loss, weakened movement, excess fatigability, incoordination, and pain. DeLuca, 8 Vet. App. at 206-207 (1995). As mentioned above, the issue is not limitation of motion; the pain is on the plantar surface of the heel. Anyway, there was no objective evidence of swelling, incoordination, or deformity. When it came to activities of daily living or job duties, the Veteran denied interference. The Board does not find there is sufficient disability to warrant an increased rating under Deluca. 

The Board has considered Hart, 21 Vet. App. at 509-510, and whether any staged ratings are appropriate but finds none are warranted here. The Board does find that the schedular rating criteria reasonably describe the Veteran's disability level and symptomatology because there is nothing exceptional about this service-connected disability. The degree of disability exhibited is contemplated by the rating schedule. The Board finds that the threshold test is not met for referral for extraschedular consideration. 38 C.F.R. § 4.16(b); Thun, 22 Vet. App. 111. 

The reasonable doubt rule is not for application and the appeal is denied. 38 U.S.C.A. § 5107(b); 38 C.F.R. § 3.102. 

ORDER

Entitlement to an initial compensable rating for a sleep apnea is denied. 

Entitlement to an initial compensable rating for a calcaneal spur of the right heel is denied. 


REMAND

When a Veteran is examined in connection with a claim for compensation, the report of the examination must include a "full description of the effects of disability upon the person's ordinary activity." 38 C.F.R. § 4.10 (2011). In the context of an examination conducted for purposes of rating a hearing disability, the Court has held that "in addition to dictating objective test results, a VA audiologist must fully describe the functional effects caused by a hearing disability in his or her final report." Martinak v. Nicholson, 21 Vet. App. 447, 455 (2007). 

In the Veteran's case, he was afforded a VA audiological examination in September 2006 that included objective audiometric testing. However, no description of any functional effects caused by service-connected hearing disability was included in examination report; there was no information regarding the activities of daily living or occupational functioning. See Martinak, 21 Vet. App. at 455. Consequently, the claim must be remanded for a complete audiological examination. 

Accordingly, the case is REMANDED for the following action: 

1. Schedule the Veteran for a VA audiological examination for the purpose of determining the current severity of his bilateral hearing loss. The claims file and a copy of this remand must be made available to the examiner in conjunction with the examination. The examiner shall perform an evaluation for hearing impairment as required by 38 C.F.R. § 4.85, that shall include a controlled speech discrimination test (Maryland CNC) and a pure tone audiometry test. 

The VA examiner should provide an explanation a description of any functional effects caused by service-connected hearing disability. All opinions and conclusions expressed must be supported by a complete rationale in a report. 

2. After the above development has been completed, re-adjudicate the Veteran's claim. If action remains adverse to the Veteran, provide him and his representative with a supplemental statement of the case and allow an appropriate opportunity to respond. Thereafter, the case should be returned to the Board. 

The appellant has the right to submit additional evidence and argument on the matter the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999). 

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board or by the Court for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West Supp. 2011). 




______________________________________________
THOMAS J. DANNAHER
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs