Citation Nr: 1736705 
Decision Date: 08/31/17 Archive Date: 09/06/17

DOCKET NO. 10-40 624 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Boston, Massachusetts


THE ISSUES

1. Entitlement to a disability rating in excess of 10 percent for the Veteran's service-connected internal derangement of the left knee with limitation of flexion.

2. Entitlement to a disability rating in excess of 10 percent for the Veteran's service-connected internal derangement of the left knee with instability.


REPRESENTATION

Appellant represented by: Disabled American Veterans 


WITNESS AT HEARING ON APPEAL

The Veteran 



ATTORNEY FOR THE BOARD

Y. A. Miller, Associate Counsel


INTRODUCTION

The Veteran served on active duty in the United States Navy from January 1980 to February 1982.

This case is before the Board of Veterans' Appeals (Board) on appeal from an August 2010 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in Providence, Rhode Island, which denied an increased rating for the Veteran's left knee. 

In July 2016, the Veteran testified before the undersigned as part of a hearing conducted via video teleconference. A copy of the transcript of that hearing has been obtained and associated with the claims file in this case. This claim was remanded in September 2016 for further development in accordance with Correia v. McDonald, 28 Vet. App. 158 (2016). The case has since been returned to the Board. 


FINDINGS OF FACT

1. For the entire period on appeal, the evidence shows the Veteran's left knee disability is manifested by limitation of flexion, at worst, to 90 degrees and pain.

2. From April 18, 2012, the evidence shows that the Veteran's left knee disability is manifested by no more than slight lateral instability.




CONCLUSIONS OF LAW

1. The criteria for a rating in excess of 10 percent for limitation of flexion of the left knee have not been met. 38 U.S.C.A. §§ 1155, 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 3.159, 3.321, 4.1-4.14, 4.40, 4.45, 4.59, 4.71a, Diagnostic Code 5260 (2016).

2. From April 18, 2012 the criteria for a separate rating of no more than 10 percent for slight lateral instability of the left knee have been met. 38 U.S.C.A. §§ 1155, 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 4.3, 4.7, 4.40, 4.45, 4.59, 4.71a, Diagnostic Code 5257 (2016).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

I. Duty to Notify and Assist

Neither the Veteran nor his representative has raised any issues with the duty to notify or duty to assist. See Scott v. McDonald, 789 F.3d 1375, 1381 
(Fed. Cir. 2015) (holding that "the Board's obligation to read filings in a liberal manner does not require the Board...to search the record and address procedural arguments when the veteran fails to raise them before the Board."); Dickens v. McDonald, 814 F.3d 1359, 1361 (Fed. Cir. 2016) (applying Scott to a duty to assist argument).
II. Disability Ratings Generally

Disability ratings are determined by applying a schedule of ratings that is based on average impairment of earning capacity. Separate diagnostic codes identify the various disabilities. 38 U.S.C.A. § 1155; 38 C.F.R., Part 4. Each disability must be viewed in relation to its history and the limitation of activity imposed by the disabling condition should be emphasized. 38 C.F.R. § 4.1. Examination reports
are to be interpreted in light of the whole recorded history, and each disability must be considered from the point of view of the appellant working or seeking work. 38 C.F.R. § 4.2. Where there is a question as to which of two disability evaluations shall be applied, the higher evaluation is to be assigned if the disability picture more nearly approximates the criteria required for that rating. Otherwise, the lower rating is to be assigned. 38 C.F.R. § 4.7. Where an increase in the disability rating is at issue, the present level of the Veteran's disability is the primary concern. Francisco v. Brown, 7 Vet. App. 55, 58 (1994).

Disability of the musculoskeletal system is primarily the inability, due to damage or infection in parts of the system, to perform the normal working movements of the body with normal excursion, strength, speed, coordination and endurance. Functional loss may be due to the absence or deformity of structures or other pathology, or it may be due to pain, supported by adequate pathology and evidenced by the visible behavior in undertaking the motion. Weakness is as important as limitation of motion, and a part that becomes painful on use must be regarded as seriously disabled. 38 C.F.R. § 4.40. In Mitchell v. Shinseki, 25 Vet. App. 32 (2011), the Court held that, although pain may cause a functional loss, "pain itself does not rise to the level of functional loss as contemplated by VA regulations applicable to the musculoskeletal system." Rather, pain may result in functional loss, but only if it limits the ability "to perform the normal working movements of the body with normal excursion, strength, speed, coordination, or endurance." Id., quoting 38 C.F.R. § 4.40.

Evidence of pain, weakened movement, excess fatigability, or incoordination must be considered in determining the level of associated functional loss in light of 38 C.F.R. § 4.40, taking into account any part of the musculoskeletal system that becomes painful on use. DeLuca v. Brown, 8 Vet. App. 202 (1995). The provisions regarding the avoidance of pyramiding do not forbid consideration of a higher rating based on greater limitation of motion due to pain on use, including flare ups. 38 C.F.R. § 4.14.

A finding of functional loss due to pain, however, must be supported by adequate pathology and evidenced by the visible behavior of the claimant. 38 C.F.R. § 4.40; Johnston v. Brown, 10 Vet. App. 80, 85 (1997). Moreover, when evaluating the reduction of excursion due to pain, not all painful motion constitutes limited motion. See Mitchell v. Shinseki, 25 Vet. App. 32, 38-40 (2011). Pain on motion can only be characterized as limiting pain constituting functional loss when the evidence shows the pain actually affects some aspect of the normal working movements of the body such as excursion, strength, speed, coordination, or endurance. Id., at 37. In other words, pain may cause a functional loss, but pain, by itself, does not constitute a functional loss. Id., at 36. 

III. Entitlement to an Increased Rating, Left Knee 

A. Applicable Law 

Diagnostic Code (DC) 5260 provides a noncompensable rating when flexion is limited to 60 degrees or more. A 10 percent rating is warranted for leg flexion limited to 45 degrees. A 20 percent evaluation is warranted for leg flexion limited to 30 degrees. A 30 percent evaluation is warranted for leg flexion limited to 15 degrees. 

DC 5261 provides a noncompensable rating when extension is limited to 5 degrees or less. A 10 percent rating is warranted for leg extension limited to 10 degrees. A 20 percent evaluation is warranted for leg extension limited to 15 degrees. A 30 percent evaluation is warranted for leg extension limited to 20 degrees. A 40 percent evaluation is warranted for leg extension limited to 30 degrees. A 50 percent evaluation is warranted for leg extension limited to 45 degrees. For rating purposes, normal range of motion in a knee joint is from 0 to 140 degrees. 38 C.F.R. § 4.71, Plate II. The knee is considered a major joint. 38 C.F.R. § 4.45(f). 

In VAOPGCPREC 9 - 2004 (Sept. 17, 2004), it was held that a Veteran who had both limitation of flexion and limitation of extension of the same leg must be rated separately under Diagnostic Codes 5260 and 5261 to be adequately compensated for functional loss associated with injury to the leg. 

Instability of the knee and limitation of motion of the knee are two separate disabilities. As such, it is permissible to award separate ratings under both a range of motion code and an instability code (DC 5257), without violating the prohibition on pyramiding. See VAOPGCPREC 23-97. 

Under DC 5257, for recurrent subluxation or lateral instability of the knee, a 10 percent evaluation is warranted for slight knee impairment. A 20 percent evaluation is warranted for moderate knee impairment. A 30 percent evaluation is warranted for severe knee impairment. 

Words such as "mild", "slight", "moderate", "marked", and "severe" are not defined in the VA Rating Schedule. Rather than applying a mechanical formula, the Board must evaluate all of the evidence to the end that its decisions are "equitable and just." 38 C.F.R. § 4.6.

B. Facts and Analysis

By way of background, the Veteran was originally granted service connection and given a non-compensable rating for his left knee disability in a December 1982 rating decision. He was assigned a 10 percent evaluation effective February 13, 1982. The disability rating was subsequently increased to 20 percent effective April 29, 1985 in a May 1985 rating decision. In a November 20, 1992 rating decision the Veteran was assigned a non-compensable rating effective September 1, 1992 after failing to appear for a VA examination scheduled for July 15, 1992. In December 2009, the Veteran submitted the claim that has become the subject of this appeal. Thereafter, he was assigned a 10 percent evaluation for limitation of his knee flexion in an August 2010 rating action, effective from his date of claim, and in a January 2016 rating decision, the RO assigned a separate 10 percent rating for instability effective December 16, 2015. 

The Veteran underwent a VA examination on January 21, 2010. The Veteran reported occasional popping and dislocation of his knee. The Veteran was not using any assistive devices, and he reported working as a grounds keeper. Upon examination, the VA examiner noted that the Veteran's left knee appeared to be normal in size, and shape with no palpable fluid or tenderness. The full extension and flexion of the left knee was carried out four times with no evidence of pain, weakness, fatigue, or lack of endurance. A two-pound weight was used and the Veteran extended his knee three more times with no pain, weakness, fatigue, or lack of endurance. Good strength resistance extension and good strength resistance flexion. There is no pain noted on repetitive motions, no history of hospitalizations, and no evidence of any functional impairment. Ultimately, the examiner concluded that the examination was normal.

VA treatment records from April 2010 document the Veteran's complaints of knee pain. The Veteran reported that his knee "popped out and gave way" and he also reported that he fell down a flight of stairs. Upon examination, the medical personnel indicated that there was arthritis in the Veteran's left knee. 

A Knee and Lower Leg Disability Benefits Questionnaire (DBQ) from April 18, 2012, revealed that the Veteran reported daily aching pain and flare-ups. He indicated there was increased pain in his left knee when weight bearing for prolonged periods of time and needing to take frequent breaks from standing two to three times per week. 

Upon physical examination, the Veteran's flexion was noted to be 90 degrees with painful motion at 80 degrees with extension at 0. Upon repetitive use testing, posttest flexion was at 90 degrees. The examiner noted functional loss in that the Veteran had less movement than normal in his left knee; incoordination, pain on movement, and swelling were also noted. The examiner recorded medial lateral instability of 0-5 millimeters, as well as episodes of joint locking and pain. Traumatic arthritis in the Veteran's left knee was noted. 

In a May 2013 VA orthopedic surgery consultation examination, the Veteran reported having constant pain in his left knee that was worse after physical activities. The Veteran reported popping in the left knee joint but no episodes of locking. Upon physical examination, the Veteran's range of motion (ROM) in his left knee was from 0 to 120 degrees. The examiner noted that the Veteran was walking without assistive devices and his gait was symmetrical. The examiner noted moderate effusion in the left knee and cartilage loss, together with a tear of his ACL. 

In VA treatment records from August 2013, the Veteran reported left knee pain and instability that worsened after physical activities. The Veteran complained of popping in his left knee, but denied locking. Upon examination, the Veteran's ROM was from 0 to 120 degrees with pain upon repetitive motion. The examiner's assessment was left knee medial compartment osteoarthritis and chronic ACL deficiency. 

In VA treatment records, the Veteran was seen in February 2014 after reporting left knee pain and instability. The Veteran reported that his pain was constant and rated it as a seven out of a 10 point scale. The Veteran reiterated that his knee pain was worse after physical activities. Upon examination, the Veteran's ROM was 120 degrees with extension at 5 degrees. The examiner reaffirmed a diagnosis of left knee medial compartment osteoarthritis and chronic ACL deficiency and prescribed the Veteran a brace. 

During VA treatment in December 2014, the Veteran complained of left knee pain and instability. The Veteran reported using a stabilization brace, but he did not report any episodes of his knee giving out; he did not report taking any regular medications for his knee. Upon physical examination, the Veteran's ROM was noted to be from 5 to 120 degrees and the examiner confirmed osteoarthritis in the Veteran's knee.

In VA treatment records from May 2015, the Veteran complained of left knee pain that occasionally woke him from sleep as well as "popping and clicking" in his knee. Upon examination the examiner found the overall alignment in the Veteran's knee to be good with no effusion. The Veteran's ROM was from 5 degrees to 120 degrees. There was mild tenderness over the medial and lateral joint lines.

In the January 2016 DBQ, the Veteran reported flare-ups of the knee which were episodes of increased left knee pain. In regard to functional loss, the Veteran reported that he had constant pain exacerbated by activities, including weight bearing. ROM for the left knee was from 0 to 100 degrees, and the Veteran's decreased ROM, along with crepitus and localized tenderness were noted to affect ambulation and the use of his lower extremity. The Veteran performed repetitive use testing, and the examiner noted less movement than normal due to disturbance of locomotion when sitting and standing. There was no lateral instability, effusion, or recurrent subluxation. Anterior instability was noted as 0-5 millimeters, while there was no posterior or medial instability. The Veteran was noted to have a meniscal tear and frequent episodes of joint pain. In regard to functional impact, the examiner concluded that the Veteran had constant left knee pain exacerbated by activities involving weight bearing and decreased ROM. 

A May 2016 VA treatment note indicated that the Veteran was continuing to suffer with left knee pain. VA treatment from June 2016 also showed the Veteran was complaining of left knee pain. Upon physical examination, the Veteran's ROM was noted to be from 5 to 120 degrees. The examiner took films, and mild to moderate degenerative changes of the left knee in the medial compartment were noted. 

VA treatment in October 2016 indicated the Veteran had complaints about knee pain as well as complaints about his knee popping, clicking, and giving way. 

In an October 2016 examination, the Veteran reported flare ups in his knee. The Veteran explained that while walking his knee would suddenly "snap out and snap back into place." The Veteran's reported functional loss as the inability to run, or jog, and he stopped climbing ladders. At the time of the examination, the Veteran reported working as an auto parts dismantler, spending a considerable amount of time on his feet. 

Upon examination, the left knee had an abnormal ROM of 5 degrees to 100 degrees. There was crepitus, but no evidence of localized tenderness or pain on palpation. The Veteran performed additional repetitive use testing with at least three repetitions and no additional functional loss was reported. The examiner indicated that pain, weakness, fatigability, or incoordination significantly limited the functional ability of the Veteran's left knee with repeated use over time. Disturbance of locomotion and interference with sitting and standing were noted by the examiner.

Additionally, the examiner indicated that there was slight recurrent subluxation as well as slight lateral instability, and a history of recurrent effusion. Joint stability testing showed 0-5 millimeters of anterior and posterior instability as well as 0-5 millimeters of medial and lateral instability. The examiner indicated that the Veteran had a meniscus condition in the past which included a meniscal tear and frequent episodes of joint "locking" and joint pain. The examiner noted the Veteran was frequently used braces and that the Veteran tried physical therapy and stopped one year prior to the examination as both the Veteran and the therapist realized that nothing further could be done. Ultimately, the examiner stated that the ROMs in the Veteran's left knee decreased over time from 0 to 140 degrees (when he was initially seen by the Veterans Administration in 1982) to 100 degrees both actively and passively in the examination on October 19, 2016.

Based on the evidence above, a rating in excess of 10 percent for limitation of flexion is not warranted. At no time during the period on appeal was the Veteran's ROM shown to be limited to less than 45 degrees. In fact, the medical evidence of record, specifically the VA examinations, consistently show that the Veteran's ROM was limited to, at worst, 90 degrees. Therefore, the Board finds that a rating in excess of 10 percent is not warranted for his limitation of flexion. 38 C.F.R. § 4.71a , Diagnostic Code 5260 (2014).

The Board notes that the additional limitation the Veteran experiences due to pain and other factors on repetition was accounted for by the VA examiners when determining the Veteran's range of motion. Additionally, the VA examination reports show that on repetitive testing, the Veteran did not have additional measurable limitation of motion. 38 C.F.R. § 4.40 , 4.45 (2014). There is no other evidence showing that the Veteran has more limitation of motion than that found at the VA examinations. Thus, with consideration of all pertinent disability factors, there remains no appropriate basis for assigning a schedular rating in excess of 10 for this functional impairment of the left knee. Likewise, extension of the knee was never shown to be limited to a point greater than 5 degrees, and therefore, a rating for limitation of extension is not indicated. 

In regard to instability, the evidence of record fails to show that the instability in the Veteran's left knee is moderate or severe in nature. At no time did the measurements in conjunction with the Veteran's stability go higher than 0-5 millimeters. While slight, moderate, and severe are not specifically defined and do not have specific corresponding measurements, a measurement of 0-5 millimeters would appear to be most appropriately characterized as slight. (The examination report form itself groups ranges of instability into 3 sets; 0-5mm, 5-10mm, and 10-15 mm.) However, as the April 2012 examination initially showed lateral instability in the Veteran's left knee, the Veteran's 10 percent rating is warranted from that time. 


ORDER

Entitlement to a disability rating in excess of 10 percent for the Veteran's service-connected internal derangement of the left knee with limitation of flexion is denied. 

Entitlement to a disability rating of 10 percent, for the Veteran's service-connected internal derangement of the left knee with instability from April 18, 2012 is granted.

Entitlement to a disability rating in excess of 10 percent for the Veteran's service-connected internal derangement of the left knee with instability is denied. 



____________________________________________
MICHAEL KILCOYNE
Veterans Law Judge, Board of Veterans' Appeals





Department of Veterans Affairs