Citation Nr: 1744032 
Decision Date: 09/27/17 Archive Date: 10/10/17

DOCKET NO. 10-20 956 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Boise, Idaho


THE ISSUES

1. Entitlement to an increased evaluation for service-connected lumbar spine degenerative disc disease, rated as 20 percent disabling prior to May 23, 2011, and from August 1, 2011, to April 2, 2012; 60 percent disabling from April 3, 2012, to May 11, 2017; and 40 percent disabling thereafter.

2. Entitlement to a disability rating in excess of 10 percent for service-connected left lower extremity numbness.

3. Entitlement to a total disability rating based on individual unemployability (TDIU).


REPRESENTATION

Appellant represented by: Veterans of Foreign Wars of the United States



WITNESS AT HEARING ON APPEAL

The Veteran and a friend


ATTORNEY FOR THE BOARD

W. Ripplinger, Associate Counsel


INTRODUCTION

The Veteran served on active duty in the United States Marine Corps from May 1989 to May 1993 and in the United States Air Force from August 1996 to May 1999. 

These matters come to the Board of Veterans' Appeals (Board) from an October 2009 rating decision by the Regional Office (RO) of the United States Department of Veterans Affairs (VA) in Boise, Idaho.

The Veteran testified at a hearing before the undersigned Veterans Law Judge in July 2011. A transcript of the hearing is of record.

The Board remanded these matters in February 2012 and December 2013 for further evidentiary development. 


FINDINGS OF FACT

1. Prior to May 23, 2011, and from August 1, 2011, to April 2, 2012, the Veteran's lumbar spine disability manifested orthopedic impairment with painful limited motion with forward flexion of 45 degrees and a combined range of motion of 145 degrees without incapacitating episodes requiring bed rest prescribed by a physician.

2. The Veteran's lumbar spine disability from April 3, 2012, to May 11, 2017, was similar to an individual who suffers from incapacitating episodes of back pain having a total duration of at least six weeks during a year requiring bed rest and treatment prescribed by a physician and did not manifest ankylosis of the entire spine.

3. From May 12, 2017, the Veteran's lumbar spine disability manifested orthopedic impairment with painful limited motion most nearly approximating forward flexion to 30 degrees or less without ankylosis or incapacitating episodes requiring bed rest prescribed by a physician. 

4. The Veteran's left lower extremity numbness most nearly approximates mild incomplete paralysis of the sciatic nerve.

5. The Veteran's service-connected disabilities did not preclude him from securing or following substantially gainful employment consistent with his education and industrial background.


CONCLUSIONS OF LAW

1. The criteria for an initial rating in excess of 20 percent for lumbar spine degenerative disc disease prior to May 23, 2011, and from August 1, 2011, to April 2, 2012, are not met. 38 U.S.C.A. § 1155 (West 2014); 38 C.F.R. §§ 4.1, 4.2, 4.3, 4.7, 4.10, 4.40, 4.45, 4.71a, Diagnostic Codes 5235-5243 (2016).

2. The criteria for a rating in excess of 60 percent for lumbar spine degenerative disc disease from April 3, 2012, to May 11, 2017, are not met. 38 U.S.C.A. § 1155; 38 C.F.R. §§ 4.1, 4.2, 4.3, 4.7, 4.10, 4.40, 4.45, 4.71a, Diagnostic Codes 5235-5243.

3. The criteria for a rating in excess of 40 percent for lumbar spine degenerative disc disease from May 12, 2017, are not met. 38 U.S.C.A. § 1155; 38 C.F.R. §§ 4.1, 4.2, 4.3, 4.7, 4.10, 4.40, 4.45, 4.71a, Diagnostic Codes 5235-5243.

4. The criteria for a rating higher than 10 percent for numbness of the left lower extremity are not met. 38 U.S.C.A. § 1155; 38 C.F.R. §§ 4.1, 4.3, 4.7, 4.124a, Diagnostic Code 8520.

5. The criteria for entitlement to a TDIU are not met. 38 U.S.C.A. § 1155; 38 C.F.R. § 4.16.


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

Lumbar Spine Degenerative Disc Disease

The Veteran contends that increased ratings are warranted for service-connected lumbar spine degenerative disc disease (DDD). Entitlement to service connection for lumbar spine DDD was granted in a February 2008 rating decision. An initial 10 percent rating was assigned effective September 5, 2006. The October 2009 rating decision on appeal increased the evaluation to 20 percent, and a June 2011 rating decision granted a temporary 100 percent evaluation effective May 23, 2011, with a return to the 20 percent evaluation on August 1, 2011. A May 2017 rating decision increased the evaluation to 60 percent effective April 3, 2012, and decreased it to 40 percent effective May 12, 2017. The Veteran contends that an increased rating is warranted for lumbar spine DDD as his symptoms are more severe than what is contemplated by the current evaluations. 

The Board notes associated issues addressed within the claims period of the lumbar spine DDD claim, such as right lower extremity radiculopathy secondary to lumbar spine, abdominal scar secondary to lumbar spine surgery, abdominal numbness secondary to lumbar spine surgery, and erectile dysfunction secondary to lumbar spine. However, the Veteran did not disagree with the rating decisions issued for those conditions and therefore they are not before the Board. Furthermore, the Veteran reported a bladder issue - urinary urgency - which he believed to be associated with his lumbar spine DDD. An October 2009 VA examination noted a history of urinary urgency, frequency, nocturia, numbness, and paresthesias; the examination indicated that the etiology of these symptoms was related to lumbar spine disability, but it did not provide any rationale for this finding. In contrast, a December 2009 VA examination specifically addressed urinary urgency and found it unrelated to the Veteran's lumbar spine disability because "loss of bladder tone/flaccidity" is associated with lumbar disabilities, not urgency. Thus, the bladder issue is not before the Board.

Disability evaluations are determined by comparing a veteran's present symptomatology with criteria set forth in VA's Schedule for Rating Disabilities (Rating Schedule), which is based on average impairment in earning capacity. 38 U.S.C.A. § 1155; 38 C.F.R. Part 4. When a question arises as to which of two ratings apply under a particular diagnostic code (DC), the higher evaluation is assigned if the disability more closely approximates the criteria for the higher rating. 38 C.F.R. § 4.7. After careful consideration of the evidence, any reasonable doubt remaining is resolved in favor of the veteran. 38 C.F.R. § 4.3.

The veteran's entire history is reviewed when making disability ratings. See generally 38 C.F.R. § 4.1; Schafrath v. Derwinski, 1 Vet. App. 589 (1991). Where entitlement to compensation has already been established and an increase in the disability rating is at issue, the present level of disability is of primary concern. "Although a rating specialist is directed to review the recorded history of a disability in order to make a more accurate evaluation, the regulations do not give past medical reports precedence over current findings." Francisco v. Brown, 7 Vet. App. 55, 58 (1994) (citation omitted). VA accordingly concentrates on the evidence that establishes the state of the veteran's disability in the period one year before the veteran files his claim through the date VA makes a final decision on the claim. Hart v. Mansfield, 21 Vet. App. 505, 509 (2007). 

The Veteran's service-connected lumbar spine DDD has been evaluated using criteria of Diagnostic Code 5243. Under the General Rating Formula for Diseases and Injuries of the Spine (which includes Diagnostic Code 5243), a 20 percent rating is warranted when forward flexion of the thoracolumbar spine is greater than 30 degrees but not greater than 60 degrees; or the combined range of motion of the thoracolumbar spine not greater than 120 degrees; or muscle spasm or guarding is present enough to result in an abnormal gait or abnormal spinal contour such as scoliosis, reversed lordosis, or abnormal kyphosis. A 40 percent rating is warranted when forward flexion of the thoracolumbar spine is 30 degrees or less; or with favorable ankylosis of the entire thoracolumbar spine. A 50 percent evaluation is warranted if there is unfavorable ankylosis of the entire thoracolumbar spine and a maximum 100 percent evaluation is warranted if there is unfavorable ankylosis of the entire spine. 38 C.F.R. § 4.71a.

In applying these regulations VA should obtain examinations in which the examiner determines whether the disability was manifested by weakened movement, excess fatigability, incoordination, or pain. Such inquiry is not to be limited to muscles or nerves. These determinations are, if feasible, to be expressed in terms of the degree of additional range-of-motion loss due to any weakened movement, excess fatigability, incoordination, or pain. DeLuca v. Brown, 8 Vet. App. 202 (1995); see also Johnston v. Brown, 10 Vet. App. 80, 84-5 (1997); 38 C.F.R. § 4.59. For disabilities evaluated on the basis of limitation of motion, VA is required to apply the provisions of 38 C.F.R. §§ 4.40, 4.45, pertaining to functional impairment.

Also under Diagnostic Code 5243, intervertebral disc syndrome can be evaluated under the Formula for Rating Intervertebral Disc Syndrome Based on Incapacitating Episodes. An "incapacitating episode" is a period of acute signs and symptoms due to intervertebral disc syndrome that requires bed rest prescribed by a physician and treatment by a physician. Under this diagnostic code, a 10 percent rating can be assigned with incapacitating episodes of at least 1 week but less than 2 weeks during the past year. A 20 percent rating can be assigned where incapacitating episodes of at least 2 weeks but less than 4 weeks during the past year are shown to have occurred. For a 40 percent rating, the incapacitating episodes need to have a total duration of at least 4 weeks but less than 6 weeks during the past year. For a 60 percent rating, the incapacitating episodes need to have a total duration of at least 6 weeks during the past year. 38 C.F.R. § 4.71a.

For the period prior to May 23, 2011, and from August 1, 2011, to April 2, 2012, the Board finds that a rating in excess of 20 percent is not warranted for the service-connected lumbar spine DDD. With respect to limitation of motion, the Veteran demonstrated forward flexion to 45 degrees and a combined range of motion to 145 degrees after repetitive use upon VA examination in October 2009. Objective evidence of pain on repetitive motion was observed but no additional limitation of range of motion was found. The Veteran's thoracolumbar spine did not manifest guarding or muscle spasm severe enough to be responsible for abnormal gait or abnormal spinal contour. These findings are consistent with the current 20 percent evaluation under the general rating formula

The functional impairment associated with the lumbar spine disability prior to May 23, 2011, and from August 1, 2011, to April 2, 2012, is also contemplated by the current 20 percent rating. In a July 2009 VA medical center (VAMC) report, the Veteran noted pain and back fatigue with too much activity. An October 2009 VA examination similarly referenced a history of fatigue, decreased motion, stiffness, and moderate "sharp/dull ach[ing]" pain precipitated by activity. In a May 2010 VA Form 9, the Veteran reported "serious flare up[s]" of his lumbar spine during which he was unable to do anything for up to 4 days; the Veteran did not state how often these occurred. A December 2010 VAMC record noted that recurrent pain precluded him from any physical activities. 

The Board has also considered whether higher ratings are warranted due to intervertebral disc disease. For this period, neither the Veteran's statements nor the objective medical evidence support a finding of incapacitating episodes of back pain as defined in 38 C.F.R. § 4.71a. The Veteran reported on the May 2010 VA Form 9 that he was unable to do anything during his serious flare ups for up to 4 days. He did not indicate, however, the frequency of these flare ups, nor did he indicate that he had been prescribed bed rest by a physician. Additionally, review of the Veteran's private and VA treatment records is wholly negative for instances of doctor-prescribed bedrest. An increased rating is therefore not warranted at any time during this period based on intervertebral disc disease. 

The Board therefore finds, with consideration of all relevant functional factors including the Veteran's statements describing his symptoms, that his disability most nearly approximates a 20 percent evaluation during the period prior to May 23, 2011, and from August 1, 2011, to April 2, 2012. 

For the period April 3, 2012, to May 11, 2017, the Agency of Original Jurisdiction rated the lumbar spine DDD under the Formula for Rating Intervertebral Disc Syndrome Based on Incapacitating Episodes. 38 C.F.R. § 4.71a. The April 2012 VA examination noted at least 6 weeks of incapacitating episodes over the last 12 months, corresponding to a 60 percent rating based on incapacitating episodes. This is the highest rating available under the Formula for Rating Intervertebral Disc Syndrome Based on Incapacitating Episodes; a higher rating under the General Rating Formula for Diseases and Injuries of the Spine is not warranted because it would require unfavorable ankylosis of the entire spine. The Board cannot find that the Veteran's spine was ankylosed during this period as he retained some useful motion of the thoracolumbar spine - forward flexion of 30 degrees at the April 2012 VA examination - and has not been diagnosed with ankylosis of the entire spine by the medical evidence. Thus, a 60 percent rating for the period April 3, 2012, to May 11, 2017, is confirmed.

Turning to the period beginning May 12, 2017, the Board finds that a rating in excess of 40 percent is not warranted for the lumbar spine DDD. At a May 2017 VA examination, the Veteran demonstrated range of motion in forward flexion of 75 degrees, with pain beginning at 30 degrees. The combined range of motion was 190 degrees. The VA examiner noted that "Pain could significantly limit functional ability when the joint is used repeatedly over a period of time, causing cessation of the offending activity(s) such as sitting on hard surfaces." These findings are consistent with a 40 percent evaluation under the general rating formula with forward flexion limited to 30 degrees or less. 

The Board also finds that a rating in excess of 40 percent is not appropriate during this period, even with consideration of various functional factors such as weakened movement, excess fatigability, incoordination, or pain. A 50 or 100 percent rating for spinal disease is only assigned with unfavorable ankylosis of the thoracolumbar spine. The record contains no diagnosis of unfavorable ankylosis of the thoracolumbar spine or the entire spine. It is therefore clear that the service-connected back disability does not manifest ankylosis. 

Although the Board must consider functional factors when determining the impairment manifested by orthopedic disabilities, the provisions of 38 C.F.R. § 4.40 and § 4.45 are not for consideration where, as here, the Veteran is in receipt of the highest rating based on limitation of motion and a higher rating requires ankylosis. Johnston v. Brown, 10 Vet. App. 80, 84-5 (1997); DeLuca v. Brown, 8 Vet. App. 202 (1995). Therefore, the Board cannot conclude that the Veteran's disability most nearly approximates ankylosis when he clearly retained some useful motion of the thoracolumbar spine throughout period beginning May 12, 2017. The Board finds that the competent evidence of record establishes that the Veteran's thoracolumbar spine was not ankylosed, and a rating in excess of 40 percent is not warranted based on limitation of motion and functional factors at any time since May 12, 2017. 

The Board has also considered whether higher ratings are warranted due to intervertebral disc disease. For the period following May 12, 2017, the objective medical evidence does not support a finding of incapacitating episodes of back pain. Review of the Veteran's private and VA treatment records is wholly negative for instances of doctor-prescribed bedrest during this period. An increased rating is therefore not warranted at any time following May 12, 2017 based on intervertebral disc disease.

Left Lower Extremity Numbness

The Veteran is currently in receipt of a 10 percent evaluation for left lower extremity numbness under Diagnostic Code 8520 based on the degree of complete or incomplete paralysis of the sciatic nerve. Incomplete paralysis of the sciatic nerve warrants a 60 percent evaluation if it is severe with marked muscular atrophy, a 40 percent evaluation if it is moderately severe, a 20 percent evaluation if it is moderate or a 10 percent evaluation if it is mild. Complete paralysis of the sciatic nerve where the foot dangles and drops, no active movement is possible of the muscles below the knee, and flexion of the knee weakened or (very rarely) lost warrants a maximum 80 percent evaluation. 38 C.F.R. § 4.124a, Diagnostic Code 8520. 

The competent medical evidence establishes that the Veteran's service-connected left lower extremity numbness most nearly approximates the current 10 percent evaluation consistent with mild incomplete paralysis of the sciatic nerve. An October 2009 VA examination reported radiating pain in the "left leg to toes," described as a "sharp/dull ache." A December 2009 VA examination described the sensation as "tingling and numbness" from the first and second toes to the buttock. A December 2011 VA examination reported that the Veteran's left leg radiculopathy had resolved following his May 2011 lumbar spine surgery, although an April 2012 VA examination noted mild left lower extremity paresthesias and/or dysthesias. A May 2017 VA examination noted mild paresthesias and/or dysthesias as well as mild numbness and identified the severity of the left lower extremity radiculopathy as "mild." Thus, based on the competent medical evidence, the service-connected radiculopathy of the lower extremities is consistent with mild incomplete paralysis of the sciatic nerve.

TDIU

The Veteran contends that he is unemployable due to service-connected disabilities. VA will grant TDIU when the evidence shows that the Veteran is precluded - by reason of his service-connected disabilities - from obtaining or maintaining "substantially gainful employment" consistent with his education and occupational experience. 38 C.F.R. §§ 3.340, 3.341, 4.16; VAOPGCPREC 75-91.

Throughout the appeal period, the Veteran has been service connected for multiple disabilities, beginning with right knee degenerative arthritis, residuals of right thumb laceration, and tinnitus, each rated 10 percent disabling. The Veteran was also service connected for posttraumatic stress disorder (PTSD), rated 30 percent disabling from April 25, 2008, and 50 percent disabling from July 14, 2015.

In addition, a 10 percent rating was granted for lumbar spine DDD beginning September 2006; this rating was increased to 20 percent effective July 15, 2009. The lumbar spine DDD rating was temporarily increased to 100% from May 23, 2011. The 20 percent rating resumed on August 1, 2011, after which it was increased to 60 percent effective April 3, 2012, and 40 percent effective May 12, 2017. 

Furthermore, left lower extremity numbness associated with lumbar spine DDD was granted 10 percent disabling effective July 22, 2009, followed by right leg L4-L5-S1 radiculopathy associated with lumbar spine DDD effective June 22, 2011 (also 10 percent disabling). A noncompensable rating for numbness from the inguinal area to xyphoid associated with lumbar spine DDD was granted effective June 22, 2011, as well as a 10 percent rating for abdominal scar associated with lumbar spine DDD, effective May 23, 2011. Finally, a 20 percent rating was granted for temporomandibular joint disorder with limitation of movement, atypical facial pain, and bruxism associated with PTSD, effective January 21, 2016.

Under 38 C.F.R. § 4.16(a), a total disability rating may be assigned to a veteran with one disability ratable at 40 percent and a combined evaluation for compensation of at least 70 percent, or a veteran with one disability rated at least 60 percent disabling. Even if the percentage requirements of § 4.16(a) are not met, however, a case will be referred to the Director of Compensation Service for extra-schedular consideration if the evidence establishes that the veteran is unable to secure and follow a substantially gainful occupation by reason of service-connected disability. 38 C.F.R. § 4.16(b). The central inquiry in a veteran's claim for TDIU is "whether that veteran's service-connected disabilities alone are of sufficient severity to produce unemployability." Hatlestad v. Brown, 5 Vet. App. 524, 529 (1993). 

In this case, the evidence does not establish that the Veteran was unemployable due to service-connected disabilities during the claims period. The Veteran worked full-time as a program assistant for the [redacted] VAMC from June 2, 2008, to July 29, 2013, earning $38,397 in the 12 months of employment preceding termination. The Veteran also worked as a contractor for [redacted] leading "team-building/endurance events" from September 28, 2012 to November 19, 2016, earning $8,474.41 in the 12 months of employment preceding termination. The Veteran reported in a July 2015 VA Form 21-8940 that he earned $28,000 in the past 12 months. Thus, the Veteran's employment was greater than marginal (as his income exceeded the poverty threshold for one person established by the U.S. Department of Commerce, Bureau of the Census) for at least the portion of the claims period prior to July 2015, and the Board finds the Veteran maintained substantially gainful employment during that period. 

The Board acknowledges the Veteran's reports of missing work due to his lumbar spine DDD, to include unpaid leave under the Family and Medical Leave Act (FMLA), as reported at the July 2011 Board hearing. The Board notes, however, that the Veteran maintained his full time employment during that period. 

Furthermore, the weight of the medical evidence does not support a finding of unemployability during the claims period. Considering all of the Veteran's physical conditions together, a May 2017 VA examination found that the Veteran would likely be precluded from "strenuous physical activities involving repetitive bending, lifting and carrying," although it did not rule out "nonrepetitive and nonstrenuous bending[,] lifting[, and] carrying." This examination also found the Veteran capable of sedentary activities with reasonable accommodations such as being able to stand or move around after an hour of sitting. This finding was further supported in December 2009, December 2011, April 2012, and February 2016 VA examinations.

The weight of the medical evidence also does not support a finding of unemployability with regard to the Veteran's PTSD. A VA provider filled out a March 2016 Social Security Administration form in which the provider indicated that the Veteran's disability affected his memory as well as his ability to understand, talk, complete tasks, get along with others, and concentrate, however the provider also indicated that the Veteran was "average" at following written instructions and spoken instructions and "above average" at getting along with authority figures such as bosses. A September 2015 VA letter from the same provider said the severity of the Veteran's chronic PTSD "is making it difficult to impossible for him to maintain gainful employment"; the letter specified, however, that the Veteran's symptoms of PTSD had worsened over the past several months "due to acute stresses the [V]eteran has been under." The letter did not address employability without consideration of the acute stressors. 

In contrast, a September 2015 VA examination identified the Veteran's acute stressors as insufficient to rise to the level of a "a lasting, permanent situation resulting in unemployability" and found the Veteran had "occupational and social impairment with reduced reliability and productivity" but not total unemployability. Likewise, a May 2017 VA examination also found the same "occupational and social impairment with reduced reliability and productivity." Thus, considering that the September 2015 VA letter identified the Veteran's symptoms leading to unemployability were based on acute stressors, as well as the VA examination findings that the Veteran is not unemployable, the Board finds the Veteran's PTSD did not render him unemployable during the claims period.

In sum, the medical evidence weighs against a finding that the Veteran's physical disabilities (including lumbar DDD and its secondary conditions) and PTSD preclude the Veteran from securing or following a substantially gainful occupation.
 

ORDER

Entitlement to an evaluation in excess of 20 percent for lumbar spine degenerative disc disease prior to May 23, 2011, and from August 1, 2011, to April 2, 2012, is denied.

Entitlement to an evaluation in excess of 60 percent for lumbar spine degenerative disc disease from April 3, 2012, to May 11, 2017, is denied.

Entitlement to an evaluation in excess of 40 percent for degenerative disc disease from May 12, 2017 is denied.

Entitlement to an evaluation in excess of 10 percent for numbness of the left lower extremity is denied.



Entitlement to a total disability rating based on individual unemployability is denied.




____________________________________________
M. H. HAWLEY
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs