﻿Citation Nr: AXXXXXXXX
Decision Date: 01/17/19 Archive Date: 01/16/19

DOCKET NO. 181001-458
DATE: January 17, 2019

ORDER

Entitlement to a rating in excess of 10 percent for left hip strain with limitation of extension, from April 11, 2016, to May 10, 2018, is denied.

Entitlement to a compensable rating for left hip strain with limitation of flexion, from April 11, 2016, to May 10, 2018, is denied.

Entitlement to a compensable rating for left hip strain with impairment of thigh, from April 11, 2016, to May 10, 2018, is denied.

Entitlement to a rating in excess of 10 percent for right hip strain with limitation of extension, from April 11, 2016, to May 10, 2018, is denied.

Entitlement to a compensable rating for right hip strain with limitation of flexion, from April 11, 2016, to May 10, 2018, is denied.

Entitlement to a compensable rating for right hip strain with impairment of thigh, from April 11, 2016, to May 10, 2018, is denied.

 

REMANDED

Entitlement to a rating in excess of 40 percent for lumbar spine degenerative disc disease from April 27, 2009, to May 10, 2018, is remanded.

Entitlement to a total disability evaluation based on individual unemployability due to service-connected disabilities (TDIU) is remanded.

FINDINGS OF FACT

1. From April 11, 2016, to May 10, 2018, the Veteran’s left hip strain on the basis of limitation of extension pursuant to Diagnostic Code 5251 has been assigned a 10 percent disability rating which is the maximum rating under the applicable schedular criteria.

2. From April 11, 2016, to May 10, 2018, the Veteran’s left hip strain on the basis of limitation of flexion has not been manifested by flexion of the thigh limited to 45 degrees or less.

3. From April 11, 2016, to May 10, 2018, the Veteran’s left hip strain on the basis of impairment of thigh has not been manifested by limitation of abduction such that legs cannot be crossed or manifested by limitation of rotation such that it is not possible to toe out more than 15 degrees.

4. From April 11, 2016, to May 10, 2018, the Veteran’s right hip strain on the basis of limitation of extension pursuant to Diagnostic Code 5251 has been assigned a 10 percent disability rating which is the maximum rating under the applicable schedular criteria.

5. From April 11, 2016, to May 10, 2018, the Veteran’s right hip strain on the basis of limitation of flexion has not been manifested by flexion of the thigh limited to 45 degrees or less.

6. From April 11, 2016, to May 10, 2018, the Veteran’s right hip strain on the basis of impairment of thigh has not been manifested by limitation of abduction such that legs cannot be crossed or manifested by limitation of rotation such that it is not possible to toe out more than 15 degrees.

CONCLUSIONS OF LAW

1. From April 11, 2016, to May 10, 2018, the criteria for an initial rating in excess of 10 percent for left hip strain have not been met. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. §§ 3.159, 4.1, 4.7, 4.40, 4.45, 4.59, 4.71a, Diagnostic Code 5251.

2. From April 11, 2016, to May 10, 2018, the criteria for an initial compensable rating for left hip strain, limitation of flexion, have not been met. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. §§ 3.159, 4.1, 4.7, 4.40, 4.45, 4.59, 4.71a, Diagnostic Code 5252.

3. From April 11, 2016, to May 10, 2018, the criteria for an initial compensable rating for left hip strain, impairment of thigh, have not been met. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. §§ 3.159, 4.1, 4.7, 4.40, 4.45, 4.59, 4.71a, Diagnostic Code 5253.

4. From April 11, 2016, to May 10, 2018, the criteria for an initial rating in excess of 10 percent for right hip strain have not been met. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. §§ 3.159, 4.1, 4.7, 4.40, 4.45, 4.59, 4.71a, Diagnostic Code 5251.

5. From April 11, 2016, to May 10, 2018, the criteria for an initial compensable rating for right hip strain, limitation of flexion, have not been met. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. §§ 3.159, 4.1, 4.7, 4.40, 4.45, 4.59, 4.71a, Diagnostic Code 5252.

6. From April 11, 2016, to May 10, 2018, the criteria for an initial compensable rating for right hip strain, impairment of thigh, have not been met. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. §§ 3.159, 4.1, 4.7, 4.40, 4.45, 4.59, 4.71a, Diagnostic Code 5253.

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Veteran had active service from February 1996 to February 2000.

On August 23, 2017, the President signed into law the Veterans Appeals Improvement and Modernization Act, Pub. L. No. 115-55 (to be codified as amended in scattered sections of 38 U.S.C.), 131 Stat. 1105 (2017), also known as the Appeals Modernization Act (AMA). This law creates a new framework for Veterans dissatisfied with VA’s decision on their claim to seek review. The Board is honoring the Veteran’s choice to participate in VA’s test program, RAMP, the Rapid Appeals Modernization Program.

The Veteran selected the Higher-Level Review lane when he submitted the RAMP election form. Accordingly, the July 2018 RAMP rating decision considered the evidence of record as of the date VA received the RAMP election form. The Veteran timely appealed this RAMP rating decision to the Board and requested direct review of the evidence considered by the Agency of Original Jurisdiction (AOJ).

Higher Ratings

Disability ratings are determined by applying the criteria set forth in the VA’s Schedule for Rating Disabilities, which is based on the average impairment of earning capacity. Individual disabilities are assigned separate diagnostic codes. 38 U.S.C. § 1155; 38 C.F.R. § 4.1. If two evaluations are potentially applicable, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria required for that rating; otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7.

The Veteran is requesting higher ratings for his already established service-connected hip disabilities. As such, the present disability level is the primary concern and past medical reports do not take precedence over current findings. See Francisco v. Brown, 7 Vet. App. 55 (1994). However, “staged” ratings are appropriate for an increased rating claim when the factual findings show distinct time periods where the service-connected disability exhibits symptoms that would warrant different ratings. Hart v. Mansfield, 21 Vet. App. 505 (2007). An increased rating has an effective date up to one year prior to receipt of the claim, if it is “factually ascertainable” that worsening took place within that one-year period. 38 C.F.R. § 3.400 (o)(2). As such, the Board has considered the evidence from one year prior to the Veteran’s April 2017 claim for increased ratings.

When evaluating musculoskeletal disabilities based on limitation of motion, 38 C.F.R. § 4.40 requires consideration of functional loss caused by pain or other factors listed in that section that could occur during flare-ups or after repeated use and, therefore, not be reflected on range-of-motion testing. 38 C.F.R. § 4.45 requires consideration also be given to less movement than normal, more movement than normal, weakened movement, excess fatigability, incoordination, and pain on movement. See DeLuca v. Brown, 8 Vet. App. 202 (1995); see also Mitchell v. Shinseki, 25 Vet. App. 32, 44 (2011). Nonetheless, even when the background factors listed in § 4.40 or 4.45 are relevant when evaluating a disability, the rating is assigned based on the extent to which motion is limited, pursuant to 38 C.F.R. § 4.71a (musculoskeletal system) or § 4.73 (muscle injury); a separate or higher rating under § 4.40 or 4.45 itself is not appropriate. See Thompson v. McDonald, 815 F.3d 781, 785 (Fed. Cir. 2016) (“[I]t is clear that the guidance of § 4.40 is intended to be used in understanding the nature of the veteran’s disability, after which a rating is determined based on the § 4.71a [or 4.73] criteria.”).

Entitlement to higher ratings for bilateral hip disabilities from April 11, 2016, to May 10, 2018

The Veteran contends that he should be assigned higher ratings for his bilateral hip disabilities. 

The Regional Office (RO) assigned 10 percent ratings for the Veteran’s right and left hip strain; noncompensable (zero percent) ratings for the right and left hip limitation of flexion; and noncompensable ratings for right and left impairments of thigh pursuant to 38 C.F.R. § 4.71a, Diagnostic Codes 5251, 5252, and 5253, respectively.

Disabilities of the hip and thigh are rated under 38 C.F.R. § 4.71a, Diagnostic Codes 5250 through 5255. 

Diagnostic Code 5250 requires ankylosis of the hip. Ankylosis is “immobility and consolidation of a joint due to disease, injury, or surgical procedure.” Colayong v. West, 12 Vet. App. 524 (1999) (citing Dorland’s Illustrated Medical Dictionary (28TH Ed. 1994) at 86). 

Diagnostic Code 5251 provides a maximum rating of 10 percent for limitation of extension of the thigh to 5 degrees. 

Diagnostic Code 5252 provides a 10 percent rating for limitation of flexion of the thigh to 45 degrees; a 20 percent rating where flexion is limited to 30 degrees; a 30 percent rating where flexion is limited to 20 degrees; and a 40 percent rating where flexion is limited to 10 degrees. 

Diagnostic Code 5253 provides a 10 percent evaluation when there is limitation of abduction of the thigh such that the legs cannot be crossed or there is limitation of rotation such that it is not possible to toe out more than 15 degrees. A 20 percent rating requires limitation of abduction with motion lost beyond 10 degrees. 

According to VA standards, full hip range of motion is defined as 0 to 125 degrees hip flexion and 0 to 45 degrees hip abduction. See 38 C.F.R. § 4.71, Plate II. 

Diagnostic Code 5254 requires flail joint of the hip. 

Under Diagnostic Code 5255, a rating of 10 percent is warranted for malunion of the femur with slight knee or hip disability. A 20 percent disability rating is assigned for malunion of the femur with moderate knee or hip disability. A 30 percent rating is warranted for malunion of the femur with marked knee or hip disability. A 60 percent rating is assigned for fracture of the femur surgical neck with false joint, and for nonunion of the femur with loose motion, weight bearing preserved with aid of brace. Finally, an 80 percent rating is warranted for fracture of femur shaft or anatomical neck with nonunion and loose motion. 38 C.F.R. § 4.71a.

The Veteran underwent VA examination in May 2017 at which time he reported having increased pain on walking and sitting. The Veteran reported that his hip pain affected his sleep, that he could not run or jump, that he missed time from work, and that he had to have job modifications due to hip pain. On physical examination of the right hip, the Veteran demonstrated flexion from zero to 110 degrees, extension from zero to 30 degrees, abduction from zero to 30 degrees, adduction from zero to 25 degrees, external rotation from zero to 50 degrees, and internal rotation from zero to 30 degrees.

On physical examination of the left hip, the Veteran demonstrated flexion from zero to 110 degrees, extension from zero to 30 degrees, abduction from zero to 30 degrees, adduction from zero to 25 degrees, external rotation from zero to 50 degrees, and internal rotation from zero to 30 degrees. For both hips, the examiner noted that adduction was not limited such that the Veteran could not cross his legs. There was objective evidence of crepitus. There was no pain with weight bearing and no objective evidence of localized tenderness or pain on palpation. There was pain on passive motion but no evidence of pain on non-weight bearing. There was no additional loss of function or range of motion after repetitive use testing on either hip. The examiner noted that she was unable to provide an opinion as to whether pain, weakness, fatigability, or incoordination could significantly limit functional ability during flare-ups or when the joint is used repeatedly over a period of time; unable to describe any such additional limitation due to pain, weakness, fatigability or incoordination; and unable to provide degrees of additional range of motion loss due to “pain on use or during flare-ups” without speculation. X-rays showed bilateral hip osteoarthritis, left worse than right; but the examiner noted that the Veteran’s osteoarthritis was less likely related to hip strain and that the current range of motion was more likely related to arthritis. See May 2017, Hip and Thigh Conditions DBQ.

Initially, the Board notes that there is no evidence of record of hip ankylosis to support the application of Diagnostic Code 5250, no evidence of flail joint to support the application of Diagnostic Code 5254, and no evidence of malunion or fracture of the femur to support the application of Diagnostic Code 5255.

With respect to thigh motion, as noted above, the Veteran is already receiving the maximum ratings for limitation of extension under Diagnostic Code 5251. 

In order for compensable ratings to be assigned for limitation of flexion under Diagnostic Code 5252, flexion of the thigh must be limited to 45 degrees. As noted above, on VA examination in May 2017, the Veteran demonstrated flexion to 110 degrees on both sides. 

In order for compensable ratings to be assigned for thigh impairment under Diagnostic Code 5253, there must be limitation of abduction of the thigh such that the legs cannot be crossed or there is limitation of rotation such that it is not possible to toe out more than 15 degrees. As noted above, on VA examination, the Veteran demonstrated external rotation from 50 degrees on both sides; and adduction was not limited on either side such that the Veteran could not cross his legs. 

With respect to the provisions of 38 C.F.R. §§ 4.40 and 4.45, in Johnston v. Brown, 10 Vet. App. 80, 85 (1997), the United States Court of Appeals for Veterans Claims (Court) determined that, if a claimant is already receiving the maximum disability rating available based on symptomatology that includes limitation of motion, it is not necessary to consider whether 38 C.F.R. § 4.40 and 4.45 are applicable. With respect to limitation of extension, as the Veteran is receiving the maximum rating allowable under Diagnostic Code 5251, 38 C.F.R. § 4.40 and § 4.45 are not for consideration for the appeal period. 

With respect to limitation of flexion under Diagnostic Code 5252 and thigh impairment under 5253, the Board has considered whether higher ratings are warranted based on functional loss. See DeLuca, 8 Vet. App. at 202. Neither the lay nor clinical evidence, however, demonstrated painful motion that functionally limited the Veteran’s ranges of motion beyond that contemplated by the current evaluations. See 38 C.F.R. § 4.59. The Veteran reported pain on usage, but higher ratings require pain accompanied by functional limitation. Thus, a higher disability rating is not warranted where the pain does not lead to limitation of motion that meets the requirements of the next disability rating. Thompson, 815 F.3d at 785-86.

There are no other comprehensive medical records which provide evidence which supports compensable ratings for the Veteran’s service-connected hip disabilities pursuant to Diagnostic Codes 5252 and 5253. 

The preponderance of the evidence is against ratings in excess of 10 percent for the Veteran’s left and right hip strain on the basis of limitation of extension pursuant to Diagnostic Code 5251; compensable ratings for left and right hip strain on the basis of limitation of flexion pursuant to Diagnostic Code 5252; and compensable ratings for left and right hip strain on the basis of impairment of thighs pursuant to Diagnostic Code 5253. A such, the benefit of the doubt doctrine is not applicable, and the claim must be denied. 38 U.S.C. 5107 (b); Gilbert v. Derwinski, 1 Vet. App. 49 (1990).

REASONS FOR REMAND

A remand is warranted to correct pre-decisional duty to assist errors. Pub. L. No. 115-55, § 2(d)(2). 

1. Entitlement to an initial rating in excess of 40 percent for lumbar spine degenerative disc disease from April 27, 2009, to May 10, 2018

While the record contains a contemporaneous VA examination regarding the Veteran’s lumbar spine disability, the examinations is inadequate.

The September 2017 VA examiner noted that the Veteran reported that he slept on the edge of his bed to be able to get out of bed more quickly because he had the urge to urinate many times throughout the night. The Veteran also reported that he urinated small amounts of urine 12 or 13 times per night. The examiner, however, noted that the Veteran did not have any other neurologic abnormalities or findings related to his lumbar spine condition such as bladder problems. See September 2017, Back (Thoracolumbar Spine) Conditions DBQ.

Prior VA examinations are inconsistent with respect to whether the Veteran’s claimed bladder problems are manifestations of his lumbar spine degenerative disc disease. Specifically, the Veteran underwent VA examination in September 2010 at which time he reported urinary urgency and frequency which the examiner did not find as unrelated to the Veteran’s service connected lumbar spine disability. See September 2010, Spine Examination. The Veteran underwent VA examination in September 2012 at which time the examiner noted that the Veteran did not have any other neurologic abnormalities or findings related to the Veteran’s lumbar spine condition such as bladder problems. See September 2012, Back (Thoracolumbar Spine) Conditions Disability Benefits Questionnaire (DBQ). The Veteran underwent VA examination in September 2015 at which time the examiner noted that the Veteran had night-time urgency/frequency related to his lumbar spine condition. See September 2015, Back (Thoracolumbar Spine) Conditions DBQ.

Thus, to correct the duty to assist error, an addendum opinion should be obtained that addresses the Veteran’s bladder complaints of nighttime urinary urgency and frequency.

2. Entitlement to a TDIU

In December 2015, the AOJ sent a letter to the Veteran’s employer requesting documentation of any use of sick or medical leave in connection with his low back disability, to include application for or use of Family and Medical Leave Act (FMLA) benefits, as well as copies of any medical records upon which any decision concerning the use of FMLA benefits was based. In May 2016, a follow-up letter was sent to the Veteran’s employer.

In May 2016, the AOJ received a response from the Veteran’s employer stating that policy required a written release from employees in order to fulfill a request for medical information. The employer requested the Veteran send a completed medical records release form in order to proceed further with the request. Attached was a form from the Veteran’s employer, Authorization to Use or Disclose Protected Health Information. 

There is no indication in the file that the AOJ advised the Veteran of the need to complete the employer’s authorization form. The information requested is important as it appears that during the appeal period, the Veteran was still working. 

Thus, to correct the duty to assist error, an additional attempt should be made to obtain these records.

The matters are REMANDED for the following action:

1. Obtain an addendum opinion from an appropriate clinician regarding whether the Veteran’s bladder complaints of nighttime urinary urgency and frequency are at least as likely as not a neurological impairment associated with the Veteran’s service-connected lumbar spine degenerative disc disease.

2. Request that the Veteran complete and return the form received from his employer, Authorization to Use or Disclose Protected Health Information. 

 

3. After obtaining the completed authorization form, request from the Veteran’s employer all documentation (from April 2009 to the present) of any use of sick or medical leave in connection with his low back disability, to include application for or use of FMLA benefits, as well as copies of any medical records upon which any decision concerning the use of FMLA benefits was based.

 

YVETTE R. WHITE

Veterans Law Judge

Board of Veterans’ Appeals

ATTORNEY FOR THE BOARD P. Olson, Counsel