﻿Citation Nr: AXXXXXXXX
Decision Date: 04/30/20 Archive Date: 04/30/20

DOCKET NO. 191016-42686
DATE: April 30, 2020

ORDER

Entitlement to a rating exceeding 10 percent for residuals of a left index finger dislocation, with Dupuytren's contracture (claimed as left index finger), is denied.

REMANDED

Entitlement to a compensable evaluation for pseudofolliculitis barbae is remanded.

FINDING OF FACT

The Veteran has limitation of motion of the fingers of the left hand that has produced functional impairment; his disability is not manifested by ankylosis of any of the fingers on the left hand.

CONCLUSION OF LAW

The criteria for a rating exceeding 10 percent for residuals of a left index finger dislocation, with Dupuytren’s contracture (claimed as left index finger) have not been met. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. §§ 4.1, 4.40, 4.45, 4.71A, Diagnostic Codes 5220-5229. 

REASONS AND BASES FOR FINDING AND CONCLUSION

The Veteran served on active duty from June 1982 to June 1985. 

This case comes before the Board of Veterans’ Appeals (Board) on appeal of a September 2019 rating decision by a Department of Veterans Affairs (VA) Regional Offices (RO).

On August 23, 2017, the President signed into law the Veterans Appeals Improvement and Modernization Act, Pub. L. No. 115-55 (to be codified as amended in scattered sections of 38 U.S.C.), 131 Stat. 1105 (2017), also known as the Appeals Modernization Act (AMA). The law creates a new framework for claimants dissatisfied with VA’s decision on their claim under the Legacy system to seek a different form of review. The Appeals Modernization Act was effective on February 19, 2019. 

In October 2019, the Veteran submitted a VA Form 10182, Notice of Disagreement, by which he appealed the September 2019 rating decision to the Board. See 38 C.F.R. §§ 19.2(b), 20.201, 20.202. The Veteran selected Direct Review, without submission of additional evidence or a Board hearing. See 38 C.F.R. § 20.202(b)(1). 

Under Direct Review, the evidentiary record is limited to the evidence that was on file on the date the Agency of Original Jurisdiction issued its decision. See 38 U.S.C. § 7113(a); 38 C.F.R. §§ 20.202(b)(1), 20.301. The evidence window in this case closed on September 12, 2019, the date of notice of the rating decision. 38 C.F.R. § 20.202(b)(1).

Legal Criteria for Increased Ratings

Disability evaluations are determined by comparing the manifestations of a disability with the criteria set forth in the Diagnostic Codes of the Schedule for Rating Disabilities (Rating Schedule). 38 U.S.C. § 1155; 38 C.F.R. Part 4. The percentage ratings represent, as far as can practicably be determined, the average impairment in earning capacity (in civilian occupations) resulting from service-connected disability. 38 C.F.R. § 4.1. Impairment of earning capacity is central to every rating. The ultimate significance of a percentage rating in any given case is the degree to which the disability has impaired the veteran’s ability to work. 38 C.F.R. § 4.1.

Relevant regulations do not require that all cases show all findings specified by the Rating Schedule; however, findings enough to identify the disease and the resulting disability and, above all, coordination of the rating with impairment of function will be expected in all cases. 38 C.F.R. §§ 4.7, 4.21. 

When there is a question which of two evaluations is to be applied, the higher evaluation will be assigned unless the veteran’s disability picture more closely approximates the criteria for the lower rating. Otherwise, the lower evaluation will be assigned. See 38 C.F.R. § 4.7. 

The evaluation of a disability accounts for competent lay evidence. Lay evidence is competent if it is provided by a person who has knowledge of facts or circumstances and conveys matters that a lay person can be observed and described. 38 C.F.R. § 3.159(a)(2). A lay claimant is competent to report physical and mental symptoms as the claimant has experienced them. See 38 C.F.R. § 3.159(a)(2).

When there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, VA will give the benefit of the doubt to the claimant. 38 U.S.C. § 5107(b). When after careful consideration by VA of all procurable and assembled data, a reasonable doubt arises regarding the degree of disability, such doubt will be resolved in favor of the claimant. 38 C.F.R. § 4.3.

Entitlement to a rating exceeding 10 percent for residuals of a left index finger dislocation, with Dupuytren’s contracture (claimed as left index finger).

A brief explanation of a procedural matter is needed. In June 2019, the RO issued a rating decision to the Veteran proposing the reduction of the rating for the left index finger disability from 10 percent to noncompensable. However, as reflected in the September 2019 rating decision and accompanying rating code sheet, the RO did not go on to reduce the rating of the left finger disability. Thus, the Veteran’s left finger disability has been assigned a 10 percent rating throughout the period on appeal. 

Therefore, the issue on appeal is entitlement to a rating exceeding 10 percent for the left finger disability. 

The claim for an increase rating of the left finger disability was filed February 9, 2019, when the Veteran’s VA Form 21-526EZ, Fully Developed Claim (Compensation) was received by VA. In the formal claim, the Veteran requested an increased rating of the left index finger disability. Therefore, the rating period applying to this appeal begins February 9, 2018, which is the earliest effective date as of which an increased rating could be granted in this case. 38 C.F.R. § 3.400(o)(2). The date represents one year prior to the date of the Veteran’s formal claim. See 38 C.F.R. § 3.400(o)(2). 

The Veteran’s left index finger disability is currently rated under Diagnostic Code 5229 for limitation of motion of the index or long finger. Diagnostic Code 5229 assigns a rating of 10 percent, for the fingers of either the major or the minor hand, when there is a gap of one inch (2.5 cm) or more between the fingertip and the proximal transverse crease of the palm with the fingers flexed to the extent possible or with extension limited by more than 30 degrees. 38 C.F.R. § 4.71A, Diagnostic Code 5229. 

The rating of 10 percent is the highest rating provided in the Rating Schedule for limitation of motion of individual digits other than the thumb. See 38 C.F.R. § 4.71A, Limitation of Motion of Individual Digits, Diagnostic Codes 5228-5230. 

VA outpatient records document treatment of the Veteran’s left finger disability. A February 2019 orthopedic note describes his condition as left palmar Dupuytren’s contracture, “pulp to palm contracture” of the middle finger, and persistent contracture of the left-hand middle and ring fingers, “pulp to palm.” An August 2018 orthopedic surgery note describes the condition as Dupuytren’s contracture involving the palmar fascia and middle finger (“pulp to palm deformity”). An August 2017 orthopedic surgery note that is incorporated in one of May 2018 describes the condition as left-hand palmar fibrosis affecting the long finger (with normal flexion, metacarpophalangeal joint (MCP) extension to 45 degrees, and PIP extension to 45 degrees, and a ring finger that has now become contracted with MCP extension to 40 degrees and proximal interphalangeal joint (PIP) full extension. The diagnoses stated in the note are Dupuytren’s contracture of the left hand, long and ring finger, and palmar fibrosis, to be released when time is available.

X-rays of the left hand, taken in March 2019 in conjunction with a VA Hand and Fingers Conditions Disability Benefits Questionnaire (DBQ) examination, reveal that the fingers of the left hand were “contracted” and there was no evidence of fracture, a significant bone or soft tissue abnormality, or degenerative joint disease. The March 2019 DBQ reflects that the Veteran was examined in person and that his dominant hand was the right. The examiner reviewed the history of the disability, including: that is started in 1984 with a dislocation injury of the left index finger; that current symptoms are Dupuytren’s contracture of the left index finger; and that the impact of the condition is the inability to grip well or shake with the left hand and painful motion of several fingers on the left hand. The examiner noted the Veteran reported having flare-ups that were manifested by hand cramps and the inability to hold any heavy items. The examiner confirmed, as well, that the Veteran said he had functional loss or impairment after repeated use over time.

On range-of-motion testing, initial range of motion for the left hand was found to be abnormal or outside normal range compared to that of the right hand. Pain with motion was noted in the examination report but it was not associated with functional loss. Pain was observed with finger flexion and finger extension, as was pain on use of the hand. The examiner noted that the abnormal range of motion contributed to functional loss in that the Veteran was unable to completely open his hand because of Dupuytren’s contracture near the long finger. Additionally, the examination revealed there was no gap between the pad of the thumb and fingers or between the finger and proximal transverse crease of the hand on maximal finger flexion. Range of motion after repetitive use was not reduced and did not produce additional functional loss. The examiner stated that although the Veteran was not examined immediately after repeated use of the left hand over time, the examination was neither medically consistent nor inconsistent with his descriptions of functional loss at those times. The examiner found that pain, weakness, fatigability, or incoordination did not significantly limit the Veteran’s functional ability after repeated use ot the left hand over time. 

The examiner noted that the Veteran was not examined during a flare-up and that the examination was neither medically consistent nor inconsistent with his description of functional loss during a flare-up. The examiner observed that during a flare-up, the Veteran would probably have additional loss in range of motion because of pain; that the loss of range of motion would depend upon his level of pain during a flare-up. The examiner explained that this was a projection from range-of-motion findings made during the examination. 

The examiner confirmed that the Veteran’s grip strength was 5/5 in each hand, which was labeled normal strength, and that there was no muscle atrophy. 

The examiner reported that there was no ankylosis of the three joints of any finger of the left (or the right) hand. 

The examiner confirmed that functional impairment of the left-hand fingers or thumb was not equivalent to what would remain after an amputation.

Addressing the x-rays taken for the examination, the examiner stated the findings were abnormal. The examiner explained that the x-rays did not show traumatic or degenerative arthritis but did reveal that the fingers were “contracted.” 

Addressing functional loss, the examiner observed that the left long, ring, and little fingers exhibited pain with flexion and extension. The examiner noted that there was no evidence of pain in the left hand with non-weight bearing or passive motion testing. Elsewhere in the report, the examiner explained that additional factors contributed to the disability of the left hand. These were specified as deformity with Dupuytren’s contracture near the 3rd finger that had in turn contracted the 4th and 5th fingers. 

In the part of the examination report inquiring whether the diagnosed condition lessened an examinee’s ability to perform any occupational task, the examiner indicated that the loss of range of motion of the fingers would prevent the Veteran from successfully working at a job requiring fine motor skills. 

The range-of-motion measurements taken by the examiner concerned both extension and flexion of the fingers. It was noted that extension of the left-hand index finger (and thumb) was full (0 degrees). It was found, however, that extension of the long finger was limited to 30 degrees at the PIP joint; extension of the ring finger was limited to 20 degrees at the PIP joint; and extension of the little finger was limited to 45 degrees at the PIP joint. Thus, limitation of extension of the long, ring, and little fingers was identified. Limitation of flexion of some fingers was identified for the ring and little finger at the PIP joint and for the long, ring, and little fingers at the distal interphalangeal joint (DIP). These measurements did not change after repetitive use of the fingers during the examination.

It was explained in the examination report that the abnormal range of finger motion contributed to functional loss in that the Veteran was unable to completely open his hand because of Dupuytren’s contracture near the long finger. It was stated, also, that there was no gap between the pad of the thumb and fingers or between the finger and proximal transverse crease of the hand on maximal finger flexion was noted.

The examiner evaluated each of the three joints of each finger and found that none were ankylosed. (Ankylosis is immobility and consolidation of a joint due to injury, disease, or surgical procedure. DORLAND’S ILLUSTRATED MEDICAL DICTIONARY 94 (32nd ed. 2012)). Therefore, a rating for ankylosis of one or more fingers is not in order.

Because the Veteran has received the maximum schedular rating for limitation of motion of an individual digit, and a higher rating for such limitation requires a finding of ankylosis, the rating assigned by the RO cannot be augmented under 38 C.F.R. §§ 4.40 and 4.45 for functional loss. See Johnston v. Brown, 10 Vet. App. 80, 85 (1997) 

Otherwise, a schedular rating may be increased if there is objective evidence during examination or treatment of functional loss exceeding that fixed by a schedular rating. See DeLuca v. Brown, 8 Vet. App. 202, 206 (1995); Mitchell v Shinseki, 25 VA 32 (2011); see 38 C.F.R. §§ 4.40, 4.45, 4.59. That increase, to a rating of 10 percent, appears to be reflected by the 10 percent rating now in place. The VA examiner did not find that the Veteran had a gap of one inch (2.5 cm) or more between the fingertip and the proximal transverse crease of the palm with the fingers flexed to the extent possible and did find that any finger extension was limited by more than 30 degrees. 38 C.F.R. § 4.71A, Diagnostic Code 5229. Those findings are needed for a rating of 10 percent under Diagnostic Code 5229, used by the RO in evaluating the disability. Thus, it appears that the rating assigned in this case contemplated functional loss in addition to the schedular standards, and the rating was therefore increased.

The Rating Schedule directs that when there is limitation of motion of two or more digits, raters must evaluate each digit separately and then combine the results. See 38 C.F.R. § 4.71A, Diagnostic Code 5215, Note (5). Limitation of motion of more than one digit of the left hand has been identified in both VA treatment records and the VA examination. However, the result of evaluation of individual digits on criteria stated in the diagnostic codes would be noncompensable. See 38 C.F.R. § 4.71A, Diagnostic Code 5229, 5230. Augmentation of a rating for functional loss was appropriately accomplished by the RO and applies to the overall disability of the Veteran’s left hand. See DeLuca; Mitchell; 25 VA 32 (2011); 38 C.F.R. §§ 4.40, 4.45, 4.59. 

Although consider, the evidence does not indicate that a higher rating is warranted under any other applicable diagnostic codes.

A rating exceeding 10 percent for the left finger disability must be denied. As the preponderance of the evidence is against the appeal, the benefit-of-the-doubt doctrine is not for application, and the appeal must be denied. See 38 U.S.C. § 5107(b); Gilbert v. Derwinski, 1 Vet. App. 49 (1990).

Evidence was added to the file during a period when new evidence was not allowed into the record of the claim. Therefore, the Board could not consider this evidence. 38 C.F.R. § 20.300. The Veteran may file a Supplemental Claim and submit or identify this evidence. 38 C.F.R. § 3.2501. If the evidence is new and relevant, VA will issue another decision on the claim, considering the new evidence in addition to the evidence previously considered. 38 C.F.R. § 3.2501. Specific instructions for filing a Supplemental Claim are included with this decision.

REASONS FOR REMAND

Entitlement to an evaluation of pseudofolliculitis barbae exceeding noncompensable is remanded.

The claim is remanded to correct a duty to assist error that occurred prior to the September 2019 rating decision. 38 C.F.R. §§ 3.159(c), 20.802(a). Specifically, it is unclear whether the March 2019 VA skin examination reflects an accurate assessment of the Veteran’s service connected pseudofolliculitis barbae disability. During the examination, the Veteran reported his current symptomatology as a rash on the body, trunk, arms, and legs and at times, lesions. The examiner noted that current treatment is Urea 20% cream for hand, legs and trunk and Clotrimazole topical solution for the feet; the examiner also noted the Veteran’s “condition” had been treated with no shaving, Kenalog, Prednisone and ointment. However, the examiner later indicated “no” to whether the Veteran had been treated with medication for a skin condition within the previous 12 months. On the physical examination, the examiner indicated that the Veteran’s pseudofolliculitis barbae covered less than 5 percent of both the total body and the exposed area, and specifically noted that the Veteran had a few ingrown hairs and shaving bumps. However, it is not clear whether the examiner’s description considers the Veteran’s report of experiencing skin symptomatology on other parts of his body and whether such symptomatology covering the other areas represents a separate or the same skin diagnosis. As the March 2019 VA examination does not clearly detail the severity and scope of the Veteran’s service-connected disability, the Veteran must be afforded another VA examination. 

The matter is REMANDED for the following action:

Schedule the Veteran for a VA examination with a board-certified dermatologist, if available, to assess the nature, extent, and severity of the Veteran’s skin disorder. The examiner must review the file and indicate such in the examination report. 

The examiner must interview the Veteran about his symptoms. Thereafter, the examiner must examine the skin condition, both on exposed and concealed areas of the Veteran’s body.

The examination report must include, but is not necessarily limited to, statements addressing the following matters: 

(i) Whether the skin condition associated with the Veteran’s beard and neck area is the same as the skin condition reported for other parts of the Veteran’s body;

(ii) Identify all of the Veteran’s skin diagnoses, to include pseudofolliculitis barbae, and if there is more than one diagnosis, whether they are etiologically related to each other so as to be manifestations of the same overall skin condition;

(iii) What percentage of the Veteran’s body the skin condition (or each condition, if there are different conditions) covers: specifically (A) more than 40 percent of the entire body or more than 40 percent of exposed areas affected; (B) more than 20 and up to 40 percent of the entire body or more than 20 and up to 40 percent of exposed areas affected; (C) at least 5 percent but less than 20 percent of the entire body or at least 5 percent but less than 20 percent .of exposed areas affected; (D) with characteristic lesions, less than 5 percent of the exposed areas affected or less than 5 percent of the exposed areas affected;

(iv) Whether the Veteran has had intermittent systemic therapy including, but not limited to, corticosteroids, phototherapy, retinoids, biologics, photochemotherapy, PUVA, or other immunosuppressive drugs required for a total duration of less than 6 weeks over the past 12- month period or systemic therapy including, but not limited to, corticosteroids, phototherapy, retinoids, biologics, photochemotherapy, PUVA, or other immunosuppressive drugs required for a total duration of less than 6 weeks over the past 12- month period or constant or near-constant systemic therapy including, but not limited to, corticosteroids, phototherapy, retinoids, biologics, photochemotherapy, psoralen with long-wave ultraviolet-A light (PUVA), or other immunosuppressive drugs required over the past 12-month period.

(v) The estimated effect on the ability of the Veteran to pursue his normal employment or any employment.

The examiner’s findings and conclusions must be set forth clearly and in detail. The findings and conclusions should take account of the information received from the Veteran during the interview about his skin disorder symptoms.

 

 

DELYVONNE M. WHITEHEAD

Veterans Law Judge

Board of Veterans’ Appeals

Attorney for the Board A. Pitts

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.